# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1035

_____

| | | |
|---|---|---|
| Advantage Media, L.L.C., | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| City of Eden Prairie, | * | |
| | * | |
| Defendant - Appellee. | * | Appeal from the United States |
| | * | District Court for the District of |
| ----------------------------- | * | Minnesota. |
| | * | |
| American Planning Association; | * | |
| International Municipal Lawyers | * | |
| Association; Scenic America, | * | |
| Incorporated; Scenic Minnesota, | * | |
| Incorporated, | * | |
| | * | |
| Amici on behalf of | * | |
| Appellee. | * | |

_____

Submitted: June 12, 2006
Filed: August 1, 2006

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Advantage Media (Advantage) submitted permit applications to Eden Prairie, Minnesota (the City) to construct fourteen large commercial billboards. All of Advantage's applications were denied because each proposed billboard violated multiple provisions of the Eden Prairie Sign Code. Advantage then brought this action under 42 U.S.C. § 1983, claiming that the sign code is unconstitutionally overbroad under the First and Fourteenth Amendments and that its own constitutional rights were violated by the denial of its applications. The district court[1] granted summary judgment to the City, and Advantage appeals. Concluding that Advantage's overbreadth challenge to the sign code fails for lack of standing and that its own rights were not violated, we affirm.

I.

Advantage is an outdoor advertising company. It rents commercial advertising space for profit on billboards which it owns, although in its pleadings it stated that it would also be willing to make some space available for nonprofit advertising. On February 13, 2004 Advantage submitted permit applications to the City for construction of thirteen 672 square foot, double sided freestanding billboards, ranging in height from 20 to 80 feet. Each billboard was to contain trivision technology, which displays three different triangular images that rotate every ten seconds to allow for multiple displays. Advantage also applied to construct one 160 square foot billboard attached to an existing building.

Eden Prairie, like many other municipalities, regulates what signage may be erected within its limits through its sign code. The sign code's stated purpose is to "encourage creativity, freedom of choice, and effective communication" while preserving the City's "visual amenities" and protecting residents from annoyance and

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

danger. The sign code regulates sign dimensions, construction, height, location, and setback (location from walkways, roadways, and property lines). It favors smaller signs over larger ones, dispersion over clustering, signs in commercial or industrial areas rather than residential, and signs located on the premises of a business (accessory signs) over those advertising a business or service located elsewhere (non accessory signs). It prohibits "motion signs" (signs with movable displays), signs of more than 80 square feet in size or 8 feet in height, freestanding signs with bases of more than 40 square feet, some types of multi faced signs, and all commercial non accessory signs. Noncommercial signage is exempt from many parts of the code and completely exempt from regulation for a specified period before and after elections.

The City reviews and approves sign applications through a permitting process. Permit applications must include a complete description of the proposed sign, a sketch, and "such other information as shall be necessary" to inform city officials of the sign's "kind, size, material, construction, and location." Under Minnesota law the City must grant or deny permit applications within 60 days, Minn. Stat. § 15.99, subd. 2(a), although it can extend the deadline to 120 days upon written notice to the applicant. Id., subd. 3(f). Until December 2004 the City's practice was to evaluate permit applications for compliance with the sign code and then subject them to additional review and approval by "the City Manager or a designee." The normal designee, a city planner named Steven Durham, stated in an affidavit that even when this extra step was in place he did not feel he had the discretion to deny permit applications which were otherwise in compliance with the sign code. The City nevertheless amended the code to eliminate this final review step. In 2005 it also added the 60 day limit for reviewing permit applications mandated by state law to the sign code itself. Denial of a permit application is appealable to the City's Board of Appeals and Adjustments (the Board).

After Advantage submitted its permit applications on February 13, 2004, it received a reply letter from Durham dated February 27 informing it that the

applications were incomplete and requesting additional information related to setback and location. Advantage responded by providing scaled aerial photographs of all the proposed sign locations. On March 26 Advantage received a second letter from Durham, informing it that the review period would be extended to 120 days due to the number of permit applications it had submitted and their uniqueness. Finally on May 28, Advantage received letters from Durham denying each application for numerous reasons. Among the reasons listed for the denials were that all of the proposed signs exceeded the size and height limits in the sign code and the thirteen proposed double sided freestanding signs had excessively large bases, were too close to nearby roadways, had too much space between each sign face, and violated the City's prohibitions on motion signs and commercial non accessory signs. The record does not indicate that Advantage appealed to the Board.

Approximately two months after its permit applications were denied, Advantage brought this action in the district court. Advantage argued that the sign code's substantive regulations are unconstitutionally overbroad under the First and Fourteenth Amendments because they favor commercial over noncommercial speech and some types of noncommercial speech over others, thereby chilling a wide array of protected expression without being narrowly tailored to a compelling government interest. Advantage also claimed that its own free speech rights had been violated by the denial of its sign permit applications. Finally, Advantage argued that the sign permit process, as it existed when Advantage's applications were denied, was both facially invalid and invalid as applied because it lacked necessary procedural safeguards and afforded city officials unbridled discretion. Advantage argued that the sign code should be declared "invalid in its entirety" and requested injunctive relief, damages, and attorney fees.

The City moved for summary judgment, arguing that Advantage lacked standing under Article III of the Constitution to bring facial or applied challenges to the sign code on its own behalf or on behalf of other potential speakers. In the

alternative, the City argued that Advantage also lacked prudential standing to bring an overbreadth challenge on behalf of noncommercial speakers and that the applied challenges on its own behalf failed on the merits. The district court agreed with all of the City's arguments and granted the motion. Advantage appeals, arguing that it did have standing to bring a facial overbreadth challenge to the sign code and that the applied challenges had merit.

## II.

We review the grant of summary judgment de novo, using the same standard as the district court. Bunch v. Canton Marine Towing Co., Inc., 419 F.3d 868, 870 (8th Cir. 2005). Summary judgment should not be granted unless there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Lund v. Hennepin County, 427 F.3d 1123, 1125 (8th Cir. 2005). An issue of fact cannot result from mere denials or conclusory allegations in the pleadings but must be based on specific factual allegations. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

## A.

Advantage argues that it has met the constitutional standing requirements necessary to bring a facial overbreadth challenge to the sign code in its entirety. The City disagrees. The Supreme Court has held that the "irreducible minimum" of constitutional standing consists of three elements:  1) an injury in fact which is "actual, concrete, and particularized"; 2) a causal connection between that injury and defendant's conduct; and 3) a likelihood that the injury can be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Advantage first contends that it has constitutional standing regardless of whether it has met the Lujan test.  Citing Broadrick v. Oklahoma, 413 U.S. 601

-5-

(1973), it claims that the Supreme Court has created an exception to normal standing requirements for overbreadth challenges under the First Amendment. So long as it has demonstrated an injury in fact and that it will "satisfactorily ... frame the issues in the case," Secretary of State of Maryland v. Joseph H. Munson Co., 467 U.S. 947, 958 (1984), Advantage claims that its facial overbreadth challenge to the sign code may proceed. The City counters that facial overbreadth challenges are not exempt from normal constitutional standing requirements and that Advantage must satisfy the Lujan test.

Article III of the Constitution limits federal jurisdiction to cases and controversies, and the "core component of standing is an essential and unchanging part of the case-or-controversy requirement." Lujan, 504 U.S. at 560. Whether a party has established the traditional elements of Article III standing is thus an inescapable threshold question. Id.; see also Mosby v. Ligon, 418 F.3d 927, 932-33 (8th Cir. 2005) (litigants must satisfy "normal requirements" of Article III standing even when bringing facial challenges). Advantage's reliance on Broadrick and Munson to support its assertion of an exception to this prerequisite for First Amendment overbreadth challenges is misplaced. As the Eleventh Circuit recently explained, those cases are better understood to create an exception to additional prudential standing doctrines which normally prevent parties from litigating the rights of others in federal court. See CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269-72 (11th Cir. 2006). Because the First Amendment's free speech guarantees need "breathing space," the Court has allowed litigants whose own speech could constitutionally be regulated to challenge overly broad regulations which affect them. See Broadrick, 413 U.S. at 611-12. Under no circumstances, however, does the overbreadth doctrine relieve a plaintiff of its burden to show constitutional standing. Advantage's overbreadth challenge must therefore meet the requirements set forth in Lujan.

-6-

Advantage argues in the alternative that it has met all three of the Lujan requirements. The parties agree that Advantage was injured by the denial of its permit applications. Advantage further maintains that since the provisions of the sign code are "not amenable to severance," its injury should be understood to have been caused by enforcement of the code in its entirety and to be redressable by invalidation of the entire code.[2] The City responds that Advantage cannot challenge the sign code in its entirety, but only the provisions which were applied to it. As a result Advantage cannot show causation and redressability for any overbreadth challenge. Most of the code provisions it alleges to be unconstitutional were not factors in the denial of its permit applications which was based on other provisions whose constitutionality is undisputed.

The interpretive approach that Advantage urges with respect to severability is inconsistent with the clear intent of the drafters of the Eden Prairie City Code and with the intent of the Minnesota legislature, from which the City derives its regulatory authority. See Lilly v. City of Minneapolis, 527 N.W.2d 107, 110 (Minn. 1994) (a city is a political subdivision of the state). The Supreme Court has described legislative intent as the "touchstone for any decision about remedy." Ayotte v. Planned Parenthood of Northern New England, 126 S.Ct. 961, 968 (2006). In this case the city code contains a comprehensive severability provision, under which "every chapter, section, subdivision, paragraph or provision of the City Code shall be, and is hereby declared, severable," such that if any provision of the code is held invalid that ruling has no effect on the other valid provisions. Eden Prairie, Minn. Code § 1.05 (2005). The Minnesota legislature has stated a similar preference for severance of an unconstitutional provision from an otherwise valid statutory

[2]Advantage no longer seeks injunctive relief, but requests that we find it has standing to challenge the sign code in its entirety and then remand for further proceedings on its claims for damages and attorney fees. It also contends that if the entire code is invalid it may have a claim for equitable relief under Minnesota law which would permit it to construct its signs.

framework, except where the remaining provisions are so dependent upon the invalid provision that "[a] court cannot presume the legislature would have enacted" one without the other, <u>see</u> Minn. Stat. Ann. § 645.20, a showing Advantage has not made here. We should be sensitive to such expressions of legislative preference for severance. <u>See</u> <u>Ayotte</u>, 126 S.Ct. at 968; <u>United States v. Booker</u>, 543 U.S. 220, 227-29 (2005); <u>cf. also</u> <u>INS v. Chadha</u>, 462 U.S. 932, 934 (1983) ("A provision is ... presumed severable if what remains after severance is fully operative as law.").

Advantage's approach to severability has been rejected in analogous situations by several other circuits. <u>See</u> <u>Tanner Advertising Group, LLC v. Fayette County, Georgia</u>, 451 F.3d 777, 790-91 (11th Cir. June 9, 2006) (en banc); <u>Brazos Valley Coalition for Life, Inc. v. City of Bryan, Texas</u>, 421 F.3d 314, 323 (5th Cir. 2005); <u>Granite State Outdoor Advertising, Inc. v. City of Clearwater, Florida</u>, 351 F.3d 1112, 1117 (11th Cir. 2003); <u>Gospel Missions of America v. City of Los Angeles</u>, 328 F.3d 548, 554 (9th Cir. 2003). The Eleventh Circuit decisions in <u>Tanner</u> and <u>Granite State</u> are directly on point. In each of these cases an outdoor advertising company (represented by Advantage's counsel in this action) sought to use denial of its sign permit applications under one part of a municipal code to challenge other provisions of the code which had not been applied to it, and in each case the challenges failed for lack of standing. <u>Tanner</u>, 451 F.3d at 791; <u>Granite State</u>, 351 F.3d at 1117. <u>Brazos</u> and <u>Gospel Missions</u> reached similar results, except that those cases dealt with noncommercial speakers and/or different forms of speech. <u>See</u> <u>Brazos</u>, 421 F.3d at 323 (antiabortion protesters lacked standing to challenge sign code provisions never applied to them and from which they appeared to be exempt); <u>Gospel Missions</u>, 328 F.3d at 554 (nonprofit religious corporation lacked standing to challenge restrictions on professional fundraisers which were not applied to it). Advantage cites to no persuasive case which has taken the approach it advocates.[3]

---

[3]An Eleventh Circuit panel did adopt Advantage's approach in <u>Tanner Advertising Group, LLC v. Fayette County, Georgia</u>, 411 F.3d 1272, 1276-77 (11th Cir. 2005), but it was later rejected by the en banc court. <u>See</u> <u>Tanner</u>, 2006 WL

Instead Advantage relies on the Supreme Court's holding in <u>Metromedia, Inc. v. City of San Diego</u>, 453 U.S. 490 (1981) (plurality opinion). <u>Metromedia</u> involved a sign company's facial challenge to a newly enacted municipal prohibition on outdoor advertising signs which exempted on premises signs and twelve largely content based categories of off premises signs. <u>Id.</u> at 495-96. The Court held that the company had standing to challenge the ordinance as a whole. <u>Id.</u> at 505 n.11. Severability was not raised as an issue in <u>Metromedia</u> and severance would likely have been inappropriate given the interrelated structure of the ordinance in question. In contrast, here we are confronted with a more comprehensive regulatory framework enacted piecemeal over a number of years, one in which universally applicable restrictions related to size and location can easily be severed from those which may necessitate more scrutiny. <u>Metromedia</u> is not applicable on the issue of severability.

Advantage also argues that even if severance might be appropriate, the severability of a statutory provision goes to the merits and should not factor into a standing determination. We disagree. The Supreme Court has incorporated severability analysis into standing determinations when there was clear evidence of legislative intent, <u>see</u> <u>Chadha</u>, 462 U.S. 931-36, as there is here. Moreover, severance of particular statutory provisions to limit standing promotes important goals, notably the avoidance of unnecessary constitutional adjudication and the sharpening of legal issues facing the court. <u>Contractors Ass'n of Eastern Pennsylvania, Inc. v. City of Philadelphia</u>, 6 F.3d 990, 996-98 (3rd Cir. 1993). The district court properly considered the provisions of the sign code to be severable in making its overbreadth standing determination.

Because the code's provisions are properly considered severable, Advantage must show injury, causation, and redressability with respect to each provision it challenges as overbroad. <u>Lujan</u>, 504 U.S. at 560. To establish causation a plaintiff

1567244

must show that its injury is "fairly traceable" to a challenged statutory provision. Republican Party of Minnesota v. Klobuchar, 381 F.3d 785, 792 (8th Cir. 2004). Since most of the content based restrictions and procedural mechanisms which Advantages claims violate the First Amendment rights of other parties were not factors in the denial of its own permit applications, it cannot show causation with respect to them. Gospel Missions, 328 F.3d at 554. These challenges fail for lack of constitutional standing.

As for redressability, it is established by a more than "merely speculative" showing that the court can grant relief to redress the plaintiff's injury. Planned Parenthood of Mid-Missouri and Eastern Kansas, Inc. v. Ehlmann, 137 F.3d 573, 576-77 (8th Cir. 1998). In this case a favorable decision for Advantage even with respect to those sign code provisions which were factors in the denial of its permit applications would not allow it to build its proposed signs, for these would still violate other unchallenged provisions of the sign code like the restrictions on size, height, location, and setback. See Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Illinois, 9 F.3d 1290, 1292 (1993) (no standing to challenge sign code's ban on off premises signs where proposed sign also violated unchallenged zoning restrictions). On an overbreadth challenge Advantage would also be barred from collecting § 1983 damages which are available only for violations of a party's own constitutional rights. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 309 (1986); Tanner, 451 F.3d at 786. Even attorney fees under 42 U.S.C. § 1988 would be unavailable because they can be awarded only to a "prevailing party" who receives "actual relief on the merits of his claim," Granite State Outdoor Advertising, Inc. v. City of St. Petersburg, Florida, 348 F.3d 1278, 1283 (11th Cir. 2003) (quoting Farrar v. Hobby, 506 U.S. 103, 109 (1992)); Advantage could never be such a party, for even in victory it would be "no closer" to erecting its billboards or obtaining damages than when litigation began. Id. Because Advantage cannot show redressability with respect to even those

provisions which did factor into the denial of its sign permit applications, it cannot challenge any part of the sign code as overbroad.[4]

B.

We turn next to Advantage's applied challenges. Although Advantage has made many different claims during the course of this litigation, from its briefs we understand it to have preserved on appeal only three applied challenges to the sign code. See Jasperson v. Purolater Courier Corp., 765 F.2d 736, 740-41 (8th Cir. 1985) (failure to raise issue on appeal constitutes abandonment of that issue). Advantage's applied challenges are: 1) that the City's denial of its sign permit applications discriminated against it on the basis of content in a manner unjustified by compelling or substantial government interests; 2) that City officials were afforded excessive discretion in reviewing its permit applications; and 3) that the sign permitting process in place when Advantage's applications were denied lacked other required procedural safeguards. The City responds that Advantage lacks standing to bring these challenges and that they also fail on the merits.

We consider first Advantage's claim that application of the restrictions on non accessory signs discriminated against it on the basis of content. As with our consideration of Advantage's overbreadth challenges, the clearly expressed intent of the Minnesota legislature and of the drafters of the Eden Prairie City Code requires us to consider each sign code provision applied to Advantage to be severable from the remainder of the code. Ayotte, 126 S.Ct. at 968; Booker, 543 U.S. at 227-29. The content discrimination Advantage alleges here is based entirely on the sign code's restriction of non accessory signs. If Advantage were seeking only injunctive or equitable relief it might therefore lack standing. See Harp, 9 F.3d at 1291-92.

---

[4]Because of this holding we need not decide whether Advantage would otherwise have had prudential standing to challenge sign code provisions on behalf of noncommercial speakers.

However, Advantage also seeks nominal damages and attorney fees, relief to which it could be entitled if it could show that the restrictions on non accessory signs violated its own First and Fourteenth Amendment rights. See Stachura, 477 U.S. at 308 n.11. Advantage's claim is therefore redressable, and it has standing. See Tandy v. City of Wichita, 380 F.3d 1277, 1290 (10th Cir. 2004) (possible right to nominal damages sufficient to show redressability).

Since Advantage admits that it would engage primarily in commercial speech, we first analyze the merits of its challenge under Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447 U.S. 557(1980). Under Central Hudson, nonmisleading commercial speech related to lawful activity may be restricted if the restriction seeks to implement a substantial government interest, directly advances that interest, and reaches no further than necessary to accomplish its objective. Metromedia, 453 U.S. at 507 (quoting Central Hudson, 447 U.S. at 564-66). The restriction need not always be content neutral, for government "may distinguish between the relative value of different categories of commercial speech." Id. at 514. The sign code's restrictions on non accessory signs as applied to Advantage are permissible under Central Hudson. Municipalities have a "weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression," including some types of signage. City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 806 (1984). Distracting roadside billboards of the type Advantage sought to erect could also pose real danger to both motorists and nearby pedestrians. Metromedia itself upheld restrictions on off premises commercial signs similar to the restrictions on non accessory signs here. 453 U.S. at 507-512. Advantage's First Amendment right to engage in commercial speech was not violated.

Advantage claims that its proposed signs will also be used for some protected noncommercial expression. Limits on such expression must generally take the form of content neutral time, place, and manner restrictions, Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); otherwise they are subject to strict scrutiny. United States

v. Playboy Entm't Group, Inc., 529 U.S. 803, 813 (2000).  Advantage argues that the City's restrictions on non accessory signs are not content neutral even with respect to noncommercial expression.  Our own examination of the sign code, however, indicates that all noncommercial expression is exempt from the general non accessory sign prohibition.  In none of the provisions which are applicable to noncommercial speech is any distinction between accessory and non accessory signs even mentioned.  Advantage's noncommercial expression was not unconstitutionally burdened.

Even if the substantive provisions of the sign code are constitutional, Advantage finally argues that the sign permitting process applied to its applications lacked necessary procedural safeguards and afforded City officials excessive discretion.  Several of the deficiencies Advantage alleges were remedied after this action commenced, which would moot any claim for injunctive relief.  See Epp v. Kerrey, 964 F.2d 754, 755-56 (8th Cir. 1992).  As we previously noted, however, Advantage has also maintained a claim for damages and attorney fees, so its challenges are not moot.  Granite State, 351 F.3d at 1119.[5]  Since Advantage might be entitled to nominal damages if it could show that it was subjected to unconstitutional procedures, it has standing to assert these claims.  Stachura, 477 U.S. at 308 n.11; Tandy, 380 F.3d at 1290.

Licensing schemes which implement content based regulations of protected speech must limit the time which the regulator has to decide on a particular license application and must have mechanisms for prompt judicial review.  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230 (1990); Freedman v. Maryland, 380 U.S. 51, 58 (1965).  In addition, they may not vest "unbridled discretion" in individual officials to permit or deny expressive activity.  City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755 (1988).  Where a scheme implements purely content neutral time,

_____

[5]A potential right to attorney fees alone would be insufficient to keep this controversy alive.  See Lewis v. Cont'l Bank Corp. 494 U.S. 472, 480 (1990).

-13-

place, and manner restrictions, the Supreme Court has said that it need only provide limits on discretion and "effective judicial review."  Thomas v. Chicago Park Dist., 534 U.S. 316, 323 (2002).

The primary procedural deficiency which Advantage alleges is the supposedly unbridled discretion city officials had to require "additional, unspecified" information after Advantage's sign permit applications had been filed, and arbitrarily to deny these applications even if they complied with the sign code's requirements.  To avoid granting officials unbridled discretion, a permitting scheme like that created by the sign code must employ "narrowly drawn, reasonable, and definite standards," although such standards can be provided through "established practice" if absent from the text of the code.  Forsyth County, Georgia v. Nationalist Movement, 505 U.S. 123, 133 (1992) (internal quotations omitted).  The required standards were not lacking here.  Although city officials were empowered to request "other information" after Advantage had submitted its applications, that information had to relate to the "kind, size, material, construction, and location" of the proposed signs. The information they did request concerned location.  There is also no evidence of impermissible discretion in the final review by the City Manager or a designee.  That designee, Steven Durham, stated that he did not have the power to deny applications which complied with the sign code.  Advantage's applications were rejected because they were not in compliance.  Other than making conclusory allegations, it has provided no evidence of any "pattern of unlawful favoritism."  Thomas, 534 U.S. at 325.  Advantage's permit applications were not subjected to the unbridled discretion of city officials.

The other procedural inadequacy alleged by Advantage is the absence of time limits for processing permit applications in the text of the sign code at the time its applications were submitted.  Even assuming that the full range of procedural safeguards mandated under FW/PBS and Freedman is necessary rather than the more limited protections required under Thomas, we conclude that the omission of time limits in the code itself was permissible.  The states have discretion to decide how

they will incorporate necessary procedural safeguards into their regulations. See Freedman, 380 U.S. at 60. It was sufficient here for Minnesota to enact the needed time limits; they did not have to be repeated in the sign code itself. Cf. Deja Vu of Nashville, Inc. v. Metro Gov't of Nashville, 274 F.3d 377, 401 (6th Cir. 2001) (procedural safeguards inadequate where neither municipal ordinance *or* state law provided for prompt judicial review).[6] We conclude that the procedures used to process Advantage's sign permit applications were constitutional.

## III.

For these reasons, the judgment of the district court is affirmed.

_____

---

[6]Advantage also claims that the sign code appeals process did not provide it with "prompt" judicial review because there is no time limit for a final decision. Since Advantage failed to avail itself of the appeals process, it lacks standing to bring this challenge. See Granite State, 351 F.3d at 1117-18. The claim also lacks merit, for here "prompt" judicial review does not equate to time limits but to the avoidance of "undue delay" as determined on a case by case basis. City of Littleton, Colorado v. Z.J. Gifts D-4 LLC, 541 U.S. 774, 781 (2004) (internal quotations omitted).