NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:   14a0116n.06

No. 12-2653

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Feb 10, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| INTERNATIONAL OUTDOOR, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CITY OF SOUTHGATE, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before:   DAUGHTREY, COOK, and WHITE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Plaintiff International Outdoor, Inc., originally brought suit in Michigan state court challenging the City of Southgate's denial of its applications for permission to erect eight billboards in the city.   Southgate removed the case to federal court, at which point both parties moved for summary judgment.   After briefing from both sides, the district court dismissed the case for lack of standing.   International Outdoor now appeals the dismissal of its lawsuit.   For the reasons set out below, we find no error and affirm the district court's dismissal of the case on standing grounds.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2011, International Outdoor, a billboard-advertising company based in Oakland County, Michigan, applied for permission to erect eight billboards on various sites in Southgate, Michigan, that are adjacent to and visible from the I-75 highway.   In July 2011, Southgate's

director of building inspections, Robert A. Casanova, informed International Outdoor by letter that its applications had been denied because "[t]he erection of billboards is clearly prohibited by § 1298.18(c)(7) of the current Codified Ordinances of Southgate." Section 1298.18(c)(7) of the city ordinances established a blanket prohibition on "[b]illboard or off-premise signs." The letter provided no other reason for the denial of International Outdoor's application. It did, however, advise International Outdoor that appealing to the Board of Zoning Appeals would be fruitless because "any change or variance would require a change be brought about by the legislative process."

Rather than pressing for a change in the law, International Outdoor responded to this ruling by filing a civil action in Michigan state court. The complaint asserted that § 1298.18(c)(7) violated the company's First and Fourteenth Amendment rights and that Southgate had engaged in exclusionary zoning when it denied permission to construct the proposed billboards. Southgate removed the case to federal court on the basis of federal-question jurisdiction. Following removal, International Outdoor filed for summary judgment contending that the city's blanket ban on billboards and off-premises signs violated its First and Fourteenth Amendment rights by favoring on-site commercial speech over off-site noncommercial speech and citing the plurality opinion in <u>Metromedia, Inc. v. City of San Diego</u>, 453 U.S. 490 (1981), which struck down a similar municipal billboard ban.

In its cross-motion for summary judgment, Southgate asserted that International Outdoor had no standing to challenge the billboard ban because, even if the billboard ban in question

were ruled unconstitutional, International Outdoor would still be prevented from building its proposed billboards because they would violate the height and size limitations imposed on all "free-standing signs" by another provision in the Southgate sign ordinance, § 1298.18(g). That section states in relevant part that:

> Free-standing signs in any Commercial or Industrial District shall be not more than twenty feet in height nor more than 100 square feet in area on each side. The bottom of such sign[s] shall be a minimum of eight feet above the ground level.

According to the building-permit applications that it submitted to Southgate in May 2011, International Outdoor's proposed billboards would measure 672 square feet in area on each side and, when mounted, would extend to a total of 70 feet in height. Southgate argued that because the proposed billboards would significantly exceed the size restrictions imposed by § 1298.18(g), International Outdoor's injury – namely, the denial of its building applications – was not redressable by the court and that International Outdoor therefore lacked Article III standing to sue.

The district court awarded summary judgment to Southgate, holding that because the proposed billboards would violate the height and size limitations in § 1298.18(g) of the sign ordinance, International Outdoor's injuries would not be redressable even were a court to find § 1298.18(c)(7) unconstitutional. It therefore concluded that International Outdoor lacked Article III standing and dismissed the suit. After the district court denied the company's motion to reconsider, this appeal followed.

**DISCUSSION**

We review *de novo* a district court's grant of summary judgment. King v. Taylor, 694 F.3d 650, 661 (6th Cir. 2012). "Summary judgment is proper if . . . there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Smith Wholesale Co. v. R.J. Reynolds Tobacco Co., 477 F.3d 854, 861 (6th Cir. 2007) (citing Fed. R. Civ. P. 56 (a)). "The evidence must be viewed in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." Id. However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." Expert Masonry, Inc. v. Boone Cnty., Ky., 440 F.3d 336, 341 (6th Cir. 2006). "[I]t must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." Id. "A mere scintilla of evidence is insufficient to create a material question of fact and defeat a motion for summary judgment; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" CareToLive v. FDA, 631 F.3d 336, 340 (6th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The dismissal of a claim for lack of standing is also reviewed *de novo*. Prime Media, Inc. v. City of Brentwood, 485 F.3d 343, 348 (6th Cir. 2007). Although plaintiffs may have to meet additional prudential requirements in order to have standing to sue in federal court, "the irreducible constitutional minimum of standing" consists of three elements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). First, plaintiffs must show that they "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized . . .

and (b) actual or imminent." Id. (internal quotation marks and citations omitted). Second, they must show "a causal connection between the injury and the conduct complained of," such that the injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Id. (internal quotation marks and citations omitted). Finally, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" by the court. Id. at 561 (internal quotation marks, citations, and alterations omitted).

International Outdoor argues that the district court erred when it concluded that the company's injuries would not be redressable by a favorable decision of the court. International Outdoor does not contest that its proposed billboards would violate § 1298.18(g) *if* that section applied to them. Nor does it challenge a prior decision from this court that holds that plaintiffs lack a redressable injury and, therefore, Article III standing when they challenge only *some* of multiple provisions in a municipal ordinance or statute barring them from constructing billboards. See Midwest Media Prop., LLC v. Symmes Twp., Ohio, 503 F.3d 456, 461 (6th Cir. 2007) (holding that plaintiff had no standing to challenge the constitutionality of a township's off-premises advertising ban because "each of [plaintiff's] nine sign applications sought permission to post signs that plainly violated the township's size and height regulations. . . . Having chosen not to challenge the size and height regulations and having filed nine applications to post a sign in the township that violated these regulations, plaintiffs cannot tenably show that success in challenging *other* regulations of the sign ordinance will redress any

injury caused by these regulations."); see also KH Outdoor, LLC v. Clay Cnty., Fla., 482 F.3d 1299, 1303-04 (11th Cir. 2007) (reaching the same conclusion on similar facts); Advantage Media, LLC v. City of Eden Prairie, 456 F.3d 793, 801-02 (8th Cir. 2006) (same); Harp Adver. Ill., Inc. v. Vill. of Chi. Ridge, Ill., 9 F.3d 1290, 1291 (7th Cir. 1993) (concluding that the plaintiff lacked standing to challenge ban because size of proposed billboard exceeded height and size requirements).

Instead, International Outdoor challenges the district court's conclusion that § 1298.18(g) applies to the billboards that it proposed to construct in Southgate. In the district court, the company argued that at no point in the application process did Southgate invoke § 1298.18(g) as a basis for denying its building permit applications, pointing out that the letter from Casanova, Southgate's director of building inspections, mentioned only § 1298.18(c)(7) as a basis for denying the applications. To buttress this argument, the company relies exclusively on an unpublished 1977 decision by the Michigan Court of Appeals, Central Advertising Co. v. City of Novi, No. 31153 (Mich. Ct. App. Sept. 14, 1977), in which the court upheld a trial court's ruling that struck down a municipal billboard ban but reversed the trial court's decision that the plaintiff's billboards nevertheless had to comply with the size restrictions imposed by another provision of the municipality's sign ordinance. International Outdoor argues that this case sets out a general principle for interpreting municipal ordinances like the one at the center of this dispute – specifically, that regulations in municipal sign ordinances do not, as a matter of Michigan law, apply to signs that the ordinance prohibits. It asserts that the district court erred

when it failed to follow the rule set forth in <u>Central Advertising</u> and instead concluded on the basis of the "plain language of the ordinance itself" that § 1298.18(g) applies to all "freestanding signs," including those signs prohibited by § 1298.18(c)(7).

International Outdoor is correct that, in this case, the interpretation of the Southgate sign ordinance is governed by Michigan's rules of statutory construction. Although "standing is a matter of federal law, not state . . . law," we look to state law, when relevant, to determine "'whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.'" <u>City Commc'ns, Inc. v. City of Detroit</u>, 888 F.2d 1081, 1086, 1088 (6th Cir. 1989) (quoting <u>Allen v. Wright</u>, 468 U.S. 737, 752 (1984)). In previous cases, we have reviewed state corporate law to determine whether a plaintiff possessed a cognizable injury-in-fact. <u>City Commc'ns</u>, 888 F.2d at 1085-88. In this case, we must also look to Michigan's rules of statutory interpretation to determine whether § 1298.18(g) applies to those signs prohibited by § 1298.18(c)(7). Moreover, in the absence of a ruling by the Michigan Supreme Court on the precise question of statutory interpretation at hand, we are prepared to give "proper regard" to a decision of the Michigan Court of Appeals. <u>Estate of Swallen v. Comm'r</u>, 98 F.3d 919, 923 (6th Cir. 1996) (quoting <u>Comm'r v. Estate of Bosch</u>, 387 U.S. 456, 465 (1967)).

Here, however, the <u>Central Advertising</u> decision is unreported and, to our knowledge, has not been followed in the almost 40 years since it was filed. Moreover, <u>Central Advertising</u> has no precedential effect under Michigan's procedural rules, Mich. Ct. R. 7.215(C), and therefore is not binding on the Michigan courts. Although that fact would not necessarily preclude a federal

court from taking an unpublished decision into account, we need not do so unless the unpublished opinion appears to provide "persuasive evidence" of how state courts would rule on the issue at hand. Bennett v. MIS Corp., 607 F.3d 1076, 1096 (6th Cir. 2010). Under the circumstances surrounding Central Advertising, including its age and apparent isolation, we conclude that the decision does not appear to represent a general approach taken by Michigan courts in the interpretation of municipal sign ordinances and, therefore, is not entitled to deference by this court.

Our conclusion to reject deference is supported by more recent, albeit more general, decisions by the Michigan Supreme Court that make clear – Central Advertising's ruling notwithstanding – that the ordinary "rules governing the construction of statutes apply with equal force to the interpretation of municipal ordinances." Gora v. City of Ferndale, 576 N.W.2d 141, 145 (Mich. 1998). One of the rules that therefore governs the interpretation of municipal ordinances in Michigan is: "If the statutory language is certain and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." Turner v. Auto Club Ins. Ass'n, 528 N.W.2d 681, 684 (Mich. 1995).

The district court concluded that, in this case, the language of the sign ordinance clearly and unambiguously indicated that the height and size restrictions set forth in § 1298.18(g) apply even to those signs barred by § 1298.18(c)(7). The court reached this conclusion on the basis of the first sentence of § 1298.18(g): "Free-standing signs in any Commercial or Industrial District shall be not more than twenty feet in height nor more than 100 square feet in area on

each side."   The district court interpreted this sentence to mean that *all* free-standing signs in Southgate, whether prohibited or permitted by the sign ordinance, must satisfy these height and size restrictions, and that the restriction therefore applied to International Outdoor's proposed billboards because these qualify as "free-standing signs."   The court's conclusion is fully consistent with our opinion in <u>Midwest Media Property, LLC</u>.   <u>See</u> 503 F.3d at 461.

Common sense also lends support to this interpretation of the ordinance.   Although municipal legislators may not specifically have intended the height and size restrictions imposed by § 1298.18(g) to apply to billboards and other off-premises signs, it is hard to imagine that they would not desire those restrictions to apply to billboards and other off-premises signs if the municipal ban on such signs were struck down on constitutional or other grounds.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.