[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14663
_____

D.C. Docket No. 1:03-cv-01855-SCJ

KH OUTDOOR, L.L.C.,

Plaintiff-Appellee,

GRANITE STATE OUTDOOR ADVERTISING, INC.,

Plaintiff,

versus

FULTON COUNTY, GEORGIA,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 1, 2014)

Before MARTIN, Circuit Judge, and EATON,[*] Judge, and HINKLE,[**] District Judge.

_____

[*] Honorable Richard K. Eaton, United States Court of International Trade Judge, sitting by designation.
[**] Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, sitting by designation.

MARTIN, Circuit Judge:

In 2003, Plaintiff KH Outdoor, L.L.C. filed a number of applications to erect billboards, all of which were either ignored or rejected by Defendant Fulton County.  KH Outdoor sued Fulton County in federal district court, and a jury awarded the company nearly $4 million in damages.  Fulton County now appeals the district court's denial of its post-trial motion for judgment as a matter of law, or in the alternative, a new trial or remittitur.  After careful review, we vacate in part and remand for the district court to conduct factfinding and reconsider whether KH Outdoor has standing to bring its claims.

## I.

KH Outdoor is a Georgia company that constructs and sells billboard space to advertisers.  The company filed this lawsuit in 2003 after its applications to erect billboards in Fulton County were rejected or ignored.  In its complaint, KH Outdoor alleged that Fulton County's sign ordinance—the basis for the County's rejection of the applications—was unconstitutional under the First Amendment.

After several years of litigation and failed attempts to settle this dispute, the district court granted summary judgment to Fulton County in 2009, finding that KH Outdoor lacked standing.  The district court recognized that relevant portions of the Fulton County sign ordinance had been ruled unconstitutional by the Georgia Supreme Court in Fulton County v. Galberaith, 647 S.E.2d 24 (Ga. 2007).

2

But it found that KH Outdoor lacked a redressable injury because the billboards it applied to erect would have been prohibited in any event by other regulations in Fulton County's sign ordinance which remained in effect after Galberaith.  On this basis, the district court dismissed KH Outdoor's claims for lack of Article III standing.

KH Outdoor appealed, and this Court vacated the district court holding on standing and remanded for reconsideration in light of the Georgia Supreme Court's intervening decision in Fulton County v. Action Outdoor Advertising, JV, LLC, 711 S.E.2d 682 (Ga. 2011).  KH Outdoor, L.L.C. v. Fulton Cnty., 433 F. App'x 775, 776 (11th Cir. 2011).  In Action Outdoor, the Georgia Supreme Court clarified that its prior decision in Galberaith struck down the Fulton County sign ordinance in its entirety.  711 S.E.2d at 685.  The Action Outdoor ruling also addressed Fulton County's separate argument that the billboards at issue were located in overlay districts in Fulton County, which have more stringent zoning regulations for billboards.  Id. at 685–86.  But the Justices found that Fulton County had not met its burden to demonstrate that these overlay district regulations would have otherwise barred the proposed billboards.  Id.  Because Action Outdoor made clear that the district court's standing determination was based on an incorrect interpretation of Galberaith, this Court vacated the district court's dismissal and remanded for reconsideration.  KH Outdoor, 433 F. App'x at 776.

3

On remand, the district court set a trial date to decide only the remaining issue of damages. Fulton County, however, filed a motion to amend its answer and for leave to file a motion for summary judgment. As it turns out, KH Outdoor and Fulton County had been involved in an entirely separate litigation in the state courts of Georgia. The state court litigation began in 2006 when KH Outdoor refiled many of its applications to build billboards in Fulton County. The 2006 applications were again denied. In fact, KH Outdoor's 2006 state court litigation was consolidated with Action Outdoor's case in the Georgia Supreme Court's 2011 decision in Action Outdoor. 711 S.E.2d at 684. Because the state trial court issued a final judgment in KH Outdoor's favor after the case was remanded from the Georgia Supreme Court, Fulton County alleged that the company's claims were now barred by the doctrine of res judicata. The district court denied Fulton County's motions and allowed the case to proceed to trial.

Relevant here, KH Outdoor filed a pre-trial motion to exclude any evidence or argument relating to standing, including evidence of Fulton County's overlay district regulations. In its motion, KH Outdoor argued that this issue had already been raised by Fulton County and rejected by the Georgia Supreme Court in Action Outdoor. Fulton County responded that the standing question at issue in Action Outdoor was completely different from that faced by the federal court, because it related to overlay district regulations in effect in 2006, not the

4

regulations in effect in 2003.  Nevertheless, the district court granted KH

Outdoor's motion to exclude any evidence relating to standing, and it also denied

Fulton County's post-trial motion for judgment as a matter of law or a new trial on

this basis.

## II.

We consider Fulton County's argument relating to KH Outdoor's standing at

the outset because it is a "threshold jurisdictional question which must be

addressed prior to and independent of the merits of a party's claims."  Dillard v.

Baldwin Cnty. Comm'rs, 225 F.3d 1271, 1275 (11th Cir. 2000) abrogated on other

grounds by Dillard v. Chilton Cnty. Comm'n, 495 F.3d 1324 (11th Cir. 2007).

Standing is a doctrine that "stems directly from Article III's 'case or controversy'

requirement," and thus "it implicates our subject matter jurisdiction."  Nat'l Parks

Conservation Ass'n v. Norton, 324 F.3d 1229, 1242 (11th Cir. 2003).  The

Supreme Court has said that "standing is perhaps the most important" jurisdictional

doctrine, FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 607 (1990)

(citation omitted) (quotation marks omitted), and as with any jurisdictional

requirement, we are powerless to consider the merits of the case when it is lacking.

Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999); see also

Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868) ("Jurisdiction is power to

declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

Importantly, standing cannot be waived or conferred upon the court by the parties. Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir. 2005). The Supreme Court has said that subject matter jurisdiction is an area of the law in which "principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S. Ct. 2099, 2104 (1982) (citation omitted). A federal court is obligated to inquire into subject matter jurisdiction on its own motion whenever it may be lacking. Fitzgerald v. Seaboard Sys. R.R., 760 F.2d 1249, 1251 (11th Cir. 1985). Significant for our purposes, "[a]n appellate federal court must satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." Univ. of S. Ala., 168 F.3d at 410 (quoting Mitchell v. Maurer, 293 U.S. 237, 244, 55 S. Ct. 162, 165 (1934)). Thus, we cannot proceed to the merits of Fulton County's appeal until we have satisfied ourselves that the district court had subject matter jurisdiction to issue a judgment in favor of KH Outdoor.

## A.

Fulton County argues, among other things, that KH Outdoor lacks standing because its injuries are not redressable. According to the County, the district court

was mistaken when it assumed that the redressability issues in Action Outdoor and this case were the same. Action Outdoor dealt with overlay district regulations in place in 2006, the County explains, while this case involves the regulations that were in effect in 2003. As a result, the County argues that the district court should have conducted a de novo review of whether KH Outdoor's alleged injuries stemming from its 2003 billboard applications were redressable. We agree.

To establish standing, a plaintiff must show "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." Granite State Outdoor Adver., Inc. v. City of Clearwater, Fla., 351 F.3d 1112, 1116 (11th Cir. 2003) (emphasis omitted). Each element is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992). As a result, a plaintiff "must ultimately support any contested facts with evidence adduced at trial" to establish Article III standing. See Bennett v. Spear, 520 U.S. 154, 168, 117 S. Ct. 1154, 1164 (1997).

For an injury to be redressable, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan,

7

504 U.S. at 561, 112 S. Ct. at 2136.  Two recent cases from this Court have addressed whether plaintiffs who seek to erect billboards have satisfied the redressability requirement.  In KH Outdoor, L.L.C. v. Clay County, Fla., 482 F.3d 1299 (11th Cir. 2007), we found that KH Outdoor had not satisfied the redressability requirement because the billboard applications at issue failed to meet the requirements of other statutes and regulations not challenged.  Id. at 1303.  Because the plaintiff lacked standing, "we [could] not reach the merits of its challenges . . . to [the] sign ordinance."  Id. at 1305.  Similarly, in Maverick Media Group, Inc. v. Hillsborough County, 528 F.3d 817 (11th Cir. 2008), we concluded that a billboard company could not establish redressability because "the County could have denied Maverick's applications under an alternative, unchallenged provision of its sign ordinance."  Id. at 821.

These decisions mirror similar outcomes in our sister circuits, all in cases concerning restrictions on the placement of billboards.  See, e.g., Coastal Outdoor Advertising Group, LLC v. Township of East Hanover, 397 Fed. App'x 794, 795–96 (3d Cir. 2010) (finding no standing where a billboard permit applicant "would not be 'substantially likely' to erect the billboard because the unchallenged setback, use, and height restrictions would still prevent [the plaintiff] from erecting its billboards"); Covenant Media of South Carolina, LLC v. City of North Charleston, 493 F.3d 421, 430 (4th Cir. 2007) (finding no standing because a

8

billboard permit application violated a spacing requirement and therefore "could not have been approved regardless of whether other substantive provisions of the Sign Regulation [were] held to be unconstitutional"); Midwest Media Property, LLC v. Symmes, 503 F.3d 456, 461 (6th Cir. 2007) (finding no standing because, "having filed nine applications to post a sign in the township that would violate [unchallenged height and size] regulations, plaintiffs cannot tenably show that success in challenging *other* regulations of the sign ordinance will redress any injury caused by these regulations"); Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, 9 F.3d 1290, 1291 (7th Cir. 1993) (finding no standing "to challenge either the sign code or the zoning code, because [the plaintiff] could not put up its sign even if it achieved total victory in this litigation"); Advantage Media, LLC v. City of Eden Prairie, 456 F.3d 793, 801 (8th Cir. 2006) (finding no standing because "a favorable decision for [plaintiff] . . . would not allow it to build its proposed signs, for these would still violate other unchallenged provisions of the sign code like the restrictions on size, height, location, and setback").

## B.

With these principles and precedent in mind, the district court erred by barring evidence of Fulton County's overlay district regulations and entering judgment in KH Outdoor's favor without ensuring that the company's injuries were redressable. We recognize that the Georgia Supreme Court considered and

9

rejected similar arguments regarding redressability in Action Outdoor. See 711 S.E.2d at 685 ("Fulton County and the cities failed to satisfy their burden of proving that overlay district regulations otherwise prohibited the sign companies from constructing the signs."). But crucially, Action Outdoor dealt with billboard applications filed with Fulton County in 2006, while the case before the district court involved applications filed in 2003. For this reason, the standing inquiries in the two cases are not identical, especially given that different regulations may have been in effect in 2003, as opposed to 2006.

Beyond that, Fulton County was prepared to submit evidence at trial demonstrating that KH Outdoor's applications would have been barred by valid county and state regulations in effect in 2003. For example, the County proffered an affidavit written by Randy Beck, a former employee in the Fulton County Department of Environment and Community Development. Beck would have testified that 30 of the 32 billboard applications filed by KH Outdoor and its predecessors were located in overlay districts containing regulations prohibiting the construction of the requested billboards. In the same way, at trial Fulton County presented the testimony of James Brown, the Outdoor Advertising Manager for the Georgia Department of Transportation. Brown testified that approximately 11 of KH Outdoor's billboard applications, at least as those applications existed at the time of trial in U.S. District Court, would have been

10

rejected as incomplete by the Georgia Department of Transportation.  He testified that the applications, in the form presented to him as he testified, would have been rejected even if they had been approved by Fulton County.  Brown also testified that two of the applications for sign permits which were the subject of the damages trial, had actually been recently denied by the Department of Transportation. Meanwhile, KH Outdoor did not present any evidence to the district court rebutting Fulton County's allegations regarding standing.  The District Court should have developed this one-sided record—perhaps in an evidentiary hearing—to resolve whether "the County could have denied [the plaintiff's] applications under an alternative, unchallenged provision of its sign ordinance."  Maverick Media Group, Inc., 528 F.3d at 821.

The dissent would have us discount our own binding precedent as well as that of other circuits, and instead rely on Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S. Ct. 568 (1977), and its progeny to come to the opposite result.  See Dissenting Op. at 14 & 18.  But the Mt. Healthy burden-shifting test only enters the analysis once a plaintiff is shown to have standing.  Of course, if the plaintiff can show it is "likely" to obtain redress from a favorable decision, Lujan, 504 U.S. at 561, 112 S. Ct. at 2136, the plaintiff would have standing and the case should proceed to the merits.  At that point, a fact-finder would make a final determination one way or another whether the government

11

"would have reached the same decision . . . even in the absence of the protected conduct." Mt. Healthy, 429 U.S. at 287, 97 S. Ct. at 576.  But a District Court must always assure itself that the plaintiff is at least likely to obtain redress before reaching the merits.[1]  Because the court below failed to do so here, it was in error.

III.

For these reasons, we **VACATE IN PART** the district court's order denying Fulton County's motion for judgment as a matter of law or, in the alternative, motion for new trial or remittitur.  We **REMAND** for the district court to entertain and review evidence about KH Outdoor's standing to pursue its claims.[2]

---

[1] Though we believe the case law can be reconciled in this fashion, even if Mt. Healthy is "irreconcilable" with cases like Maverick and KH Outdoor at their logical extremes, (Dissenting Op. at 16–18) this case is not the appropriate vehicle to resolve any alleged conflict.  Given the plethora of decisions in this circuit and others engaging in a standing analysis as we have today on almost identical facts, it is enough to rely on that precedent to reach our result.

[2] Because we remand this case for additional proceedings relating to standing, we refrain from addressing the merits of Fulton County's appeal.  These issues will be addressed if the district court finds that KH Outdoor has standing to pursue these claims.  See Bischoff v. Osceola Cnty., Fla., 222 F.3d 874, 886 (11th Cir. 2000) (refraining from reviewing the district court's ruling on the merits until after the district court held an evidentiary hearing on the question of standing).

Our opinion should not be misunderstood, however, as an agreement with the district court's denial of Fulton County's motion for judgment as a matter of law.  Quite to the contrary, many of the issues raised by Fulton County give us pause.  For example, we have serious doubts regarding the district court's finding that res judicata does not apply here.  The state court action and the federal court action both involve the identical claim that Fulton County was violating KH Outdoor's First Amendment rights by refusing to allow KH Outdoor to build billboards on the same parcels of land.  Beyond that, KH Outdoor conceded to the district court that there was at least a risk of double recovery between the state court action and the federal court action.  These facts weigh heavily in favor of a finding that the two cases involve identical causes of action such that res judicata should apply under Georgia law.

HINKLE, District Judge, concurring in part:

This is an appeal from a nearly $3 million judgment on a jury verdict for the plaintiff sign company against the defendant county. The plaintiff says the defendant unconstitutionally denied the plaintiff's 2003 applications to erect 32 specific signs. The case is 11 years old and counting.

The defendant raises substantial issues. The majority addresses only one of them. The majority concludes it must take this approach because the issue it addresses is one of standing. I believe the issue is not standing and that we should address the other issues properly before us—that we should move this case as far as possible toward a too-long-delayed resolution.

To illustrate that the issue is not standing, I start with this indented statement of the case:

> The plaintiff asserts that on a specific occasion in the past, the defendant—a political subdivision of the state—made a decision that violated the plaintiff's First Amendment rights. The plaintiff sued the defendant, seeking a damages award and injunctive relief. The defendant denied that it violated the First Amendment. Alternatively, the defendant asserted that, even if it did violate the First Amendment, the plaintiff was not entitled to relief, because the defendant would have made the same decision anyway, for legitimate, unrelated reasons. The plaintiff denied that the defendant would have made the same decision anyway.

13

The indented statement is a scrupulously accurate description of this case.  It is also a scrupulously accurate description of <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429 U.S. 274 (1977).

<u>Mt. Healthy</u> is the landmark Supreme Court decision that governs cases just like this one: cases in which a defendant is accused of a past constitutional violation and asserts, as one of its defenses, that it would have made the same decision anyway.  When there is a genuine factual dispute about this, it is an issue for trial, typically before a jury.  The burden is on the plaintiff to prove the constitutional violation, but the burden is on the defendant to prove the same-decision defense.  If the defendant wins on this issue—the jury finds that the defendant would have made the same decision anyway—the court properly enters a judgment for the defendant on the merits.  The court does not dismiss the case for lack of standing.

The circuit's pattern jury instructions include a <u>Mt. Healthy</u> instruction.  Hundreds of cases have been tried in this circuit under <u>Mt. Healthy</u>, always treating the same-decision defense as a merits issue.  The circuit has repeatedly applied <u>Mt. Healthy</u> as a merits case.

A cursory search turns up the following examples, all First Amendment cases involving the same general pattern as <u>Mt. Healthy</u> and the case at bar: the plaintiff claimed that the defendant took action that violated the plaintiff's First

14

Amendment rights, the defendant denied it, and alternatively the defendant asserted it would have made the same decision anyway, even in the absence of the First Amendment violation.

In Stanley v. City of Dalton, Georgia, 219 F.3d 1280 (11th Cir. 2000), the district court granted summary judgment for the defendant. The Eleventh Circuit held there were disputed issues of fact on the merits—specifically including the same-decision defense—that precluded summary judgment. But the court held the defendant had qualified immunity. So the Eleventh Circuit affirmed the judgment for the defendant on the merits, without deciding whether the defendant would have made the same decision anyway. The Eleventh Circuit did not send the case back for an evidentiary hearing on standing, as would have been required under the majority's analysis here.

In Smith v. Mosley, 532 F.3d 1270 (11th Cir. 2008), the court upheld a summary judgment on the merits for the defendant, on the ground that no reasonable jury could have found that the defendant would not have made the same decision anyway. The court did not question the district court's standing to enter the judgment on the merits.

In Allen v. Autauga County Board of Education, 685 F.2d 1302 (11th Cir. 1982), the court upheld a judgment for the plaintiffs on the ground that the district court's findings of fact after a bench trial properly resolved the same-decision issue

15

in the plaintiffs' favor.  The court did not say this was a standing issue or should have been addressed other than as part of the trial on the merits.

In Paschal v. Florida Public Employees Relations Commission, 666 F.2d 1381 (11th Cir. 1982), the jury held that the protected speech was not a motivating factor in the challenged decision, thus resolving the claim for the defendant without reaching the disputed same-decision issue.  The Eleventh Circuit upheld the resulting judgment for the defendant on the merits.  The court did not send the case back for resolution of the same-decision issue, as would have been proper if the issue was standing.

Many more cases like this could be cited.  The bottom line is this: in our case the majority is correct that the defendant should have been allowed to present its same-decision evidence.  But properly analyzed, this is a merits issue.

In taking a different approach—in treating the same-decision issue as standing—the majority relies on two recent Eleventh Circuit decisions that are different from our case.  They are different because in each there was no real dispute about whether the defendant would have made the same decision anyway.  In KH Outdoor, L.L.C. v. Clay County, Fla., 482 F.3d 1299 (11th Cir. 2007), the "uncontroverted evidence" showed that the plaintiff sign company's proposed signs failed to comply with the Florida Building Code and Florida statutes that the plaintiff did not challenge.  482 F.3d at 1304.  In Maverick Media Group, Inc. v.

Hillsborough County, 528 F.3d 817 (11th Cir. 2008), the sign company applied to erect signs that "clearly" were impermissible under other, unchallenged provisions. 528 F.3d at 821.

When it is clear that the defendant would have made the same decision anyway, it is of course clear that the plaintiff will be unable to obtain redress. And so it is not surprising that a court could view this as lack of standing. But when there is a genuine dispute about this—when, as the majority suggests here, the district court may need to conduct an evidentiary hearing—then the issue is not standing, but the merits. The genuine dispute is a case or controversy, and the plaintiff's stake in that dispute provides standing. The ability to award damages or injunctive relief if the plaintiff wins establishes redressability. And the appropriate evidentiary hearing is a jury trial. To hold otherwise violates the Seventh Amendment.

To be sure, KH v. Clay County and Maverick did not explicitly say this was a standing issue only because it was clear that the defendant would have made the same decision anyway. Somehow courts have treated sign cases differently, perhaps because in the past sign cases often involved only injunctive relief, or perhaps because other statutes or ordinances often clearly prohibit the signs, with no need for an evidentiary hearing to confirm that result. Indeed, KH  v. Clay County relied on Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Ill., 9

17

F.3d 1290 (7th Cir. 1993), a case in which a sign company sought only injunctive relief and in which other, unchallenged provisions plainly would have prohibited the signs at issue.  Harp Advertising in turn relied on Renne v. Geary, 501 U.S. 312 (1991), again a case seeking only prospective relief, and a case in which the Court said the requested relief would make no practical difference.  The requested relief in the case at bar, in contrast, would make a practical difference: the plaintiff would get a lot of money.

Standing principles are, or at least should be, the same in sign cases as in other cases.  We should not allow sign cases that are different—because the validity of the same-decision defense is clear at the outset—to dictate the result in sign cases like this one in which there is a disputed same-decision defense.  But if this view is rejected—if KH v. Clay County and Maverick are read as applying to sign cases in which there is a genuine dispute over the same-decision defense— then KH v. Clay County and Maverick cannot be squared with the many earlier same-decision cases, including Mt. Healthy, Stanley, the many cases cited in Stanley, and the other cases cited above.

We of course must follow a prior panel.  But when prior panel decisions are in irreconcilable conflict, the controlling decision is the oldest, not the most recent.  As between the many older cases treating the same-decision defense as a merits issue, and the two more recent sign-ordinance cases treating this as a standing

18

issue, our obligation is to follow the older cases. See, e.g., Walker v. Mortham, 158 F.3d 1177, 1188-89 (11th Cir. 1998). And here, following the older cases has the added advantage that they are doctrinally sound and agree with the law as set out by the Supreme Court.

Three more points should be mentioned on this issue.

First, it may seem odd that the same-decision defense in this case could turn on a genuine factual dispute. The defendant claims that its "overlay" restrictions would have prohibited the plaintiff from erecting at least some of the signs at issue, even if the challenged sign ordinance had not existed. One might think this could be resolved simply be consulting the overlay restrictions and examining the plaintiff's applications to erect the signs. But it apparently is not that easy. Even determining which overlay restrictions were actually in effect apparently has proven difficult. And there of course could be disputes about the precise location or other attributes of a proposed sign or about how county officials actually applied the overlay restrictions. So while the same-decision defense here may implicate legal issues, it also implicates factual issues that should have been resolved only by summary judgment or trial.

Second, the majority cites proffered testimony that 30 of the plaintiff's 32 proposed signs violated the overlay restrictions and that 11 would have been denied by the Georgia Department of Transportation. But if even 1 proposed sign

19

would have survived overlay and state review, the same-decision defense fails for that sign, and so, even on the majority's view of standing law, the plaintiff has standing. The likelihood is high that what the majority labels a standing issue will not end the case. If that is so, then sooner or later a decision will be needed on the other issues now before us.

Third, when one gets mired in doctrinal intricacies, it sometimes helps to take a step back, to consider the bigger picture. This is a case in which the plaintiff claims that the defendant violated the plaintiff's own constitutional rights. The plaintiff says the violation caused millions of dollars in actual damage to the plaintiff. A jury agreed. The plaintiff is the party claiming the millions and holding a judgment; if the plaintiff wins, it gets the money. The plaintiff may or may not be correct on the merits. But it is odd to say the plaintiff lacks standing.

In any event, the case is going back to the district court. If, as seems possible, the district court decides that the overlay restrictions or state law would not have precluded the plaintiff from erecting these signs, the defendant's other challenges to the verdict will again be front and center. I would decide those issues now.

I would sustain the defendant's position in at least two respects.

First, the plaintiff sought damages from 2003 forward, even for a period after some of the sign locations became part of new or expanding municipalities,

20

ending the defendant county's control over signs in those locations.  The defendant asserted the plaintiff failed to mitigate its damages by applying to the municipalities; a successful application would have cut off damages going forward. The court barred the defendant from presenting evidence on this.  At oral argument before us, the plaintiff said everybody knows the municipalities would not have permitted the signs.  But the defendant should not have been foreclosed from pursuing its mitigation defense based on what everybody supposedly knows.

Second, the plaintiff presented damages experts who testified to the lost cash flow a typical sign company would suffer from the loss of these locations.  But the recoverable element of damages is lost profits, not lost cash flow.  And that is so even if, as these experts testified, companies decide whether to erect signs based on projected cash flow.  Moreover, the issue is not what a typical company would have lost, but what this plaintiff lost.  None of this necessarily means these experts should have been excluded.  But it does mean that, to get the testimony in and lost profits to the jury, the plaintiff was obligated to fill in the gaps.

That the jury did not fully accept the experts' testimony does not render this error harmless.  It is true that the jury awarded only "general" damages, not lost profits, but if not based on lost profits, it is not clear what the general damages could properly have consisted of.  And even though the jury awarded only a

21

fraction of the lost cash flow calculated by the experts, the experts' testimony might well have affected the verdict.

For these reasons, I would vacate the judgment and remand the case for a new trial.