**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1996**

CENTRAL RADIO COMPANY INC; ROBERT WILSON; KELLY DICKINSON,

Plaintiffs - Appellants,

v.

CITY OF NORFOLK, VIRGINIA,

Defendant - Appellee.

**No. 13-1997**

CENTRAL RADIO COMPANY INC; ROBERT WILSON; KELLY DICKINSON,

Plaintiffs - Appellees,

v.

CITY OF NORFOLK, VIRGINIA,

Defendant - Appellant.

On Remand from the Supreme Court of the United States.
(S. Ct. No. 14-1201)

Argued: September 17, 2014      Decided: January 29, 2016

Before GREGORY, AGEE, and KEENAN, Circuit Judges.

Dismissed in part, affirmed in part, reversed in part, and remanded by published opinion. Judge Keenan wrote the opinion, in which Judge Gregory and Judge Agee joined.

---

**ARGUED:** Michael Eugene Bindas, INSTITUTE FOR JUSTICE, Bellevue, Washington, for Appellants/Cross-Appellees. Adam Daniel Melita, CITY ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Robert P. Frommer, Erica Smith, INSTITUTE FOR JUSTICE, Arlington, Virginia, for Appellants/Cross-Appellees. Melvin W. Ringer, CITY ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellee/Cross-Appellant.

---

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider whether the district court erred in granting summary judgment to the City of Norfolk on claims that the City's sign ordinance violated the plaintiffs' rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. The plaintiffs, a radio manufacturing and repair business and two of its managers, asserted that the sign ordinance unconstitutionally exempted certain displays from regulation, effectuated a prior restraint on speech, and was enforced selectively in a discriminatory manner by zoning officials.

Our resolution of this appeal is guided by the Supreme Court's recent decision in Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). Applying the principles of content neutrality articulated in Reed, we hold that the sign ordinance challenged in the plaintiffs' complaint is a content-based regulation that does not survive strict scrutiny. Accordingly, we reverse the district court's judgment with respect to the plaintiffs' First Amendment challenge and remand that claim to the district court to award nominal damages to the plaintiffs and for consideration of other appropriate relief. However, we find no merit in the plaintiffs' selective enforcement claim, and we affirm the court's disposition of that claim.

Because the City of Norfolk amended the sign ordinance in October 2015 following the Court's decision in Reed, we also conclude that the plaintiffs' request for prospective relief based on the content restrictions in the prior ordinance is moot. On remand, the district court may consider whether the plaintiffs may bring a new claim challenging the constitutionality of the amended ordinance and seek any associated injunctive relief.

I.

A.

The City of Norfolk (the City) adopted a zoning ordinance that included a chapter governing the placement and display of signs (the former sign code).[1] See Norfolk, Va., Code app. A § 16 (2012). The City enacted the former sign code for several reasons, including to "enhance and protect the physical appearance of all areas of the city," and to "reduce the distractions, obstructions and hazards to pedestrian and auto traffic caused by the excessive number, size or height,

---

[1] In November 2014, the City amended the former sign code to remove the code's exemption for flags or emblems of "religious organizations." See Norfolk, Va., Ordinance 45,769 § 1 & Ex. A (Nov. 25, 2014). The City amended the ordinance again in October 2015, as we discuss further below. Unless otherwise noted, all citations in this opinion are to the pre-amendment version of the former sign code challenged in the plaintiffs' complaint, see J.A. 231-82.

inappropriate types of illumination, indiscriminate placement or unsafe construction of signs." Id. § 16-1.

The former sign code applied to "any sign within the city which is visible from any street, sidewalk or public or private common open space." Id. § 16-2. However, as defined in the ordinance, the term "sign" did not encompass any "flag or emblem of any nation, organization of nations, state, city, or any religious organization," or any "works of art which in no way identify or specifically relate to a product or service." Id. § 2-3. Such exempted displays were not subject to regulation under the former sign code.

With respect to signs that were eligible for regulation, the former sign code generally required that individuals apply for a "sign certificate" verifying compliance with the code. Id. §§ 16-5.1, 16-5.3. Upon the filing of such an application, the City was required to issue a "sign certificate" if the proposed sign complied with the provisions that applied in the zoning district where the sign was to be located. Id. §§ 16-5.4, 16-8.

In the "I-1" industrial zoning district in which plaintiff Central Radio Company Inc.'s (Central Radio) property is located, the former sign code restricted the size of signs. Id. § 16-8.3. The size restrictions varied depending on whether a sign was categorized as a "temporary sign," which was permitted

5

to be as large as 60 square feet, a "freestanding sign," which was permitted to be as large as 75 square feet, or an "other than freestanding sign," which was permitted to be as many square feet as the number of linear feet of building frontage facing a public street.[2]  Id.  The City did not patrol its zoning districts for violations of size restrictions or other provisions of the former sign code, but did inspect displays in response to complaints made by members of the public.

B.

The plaintiffs' challenges to the City's sign code relate to a protest of certain adverse action taken against Central Radio by the Norfolk Redevelopment and Housing Authority (NRHA). The NRHA is a chartered political subdivision of Virginia, and consists of an independent committee of seven members appointed by the Norfolk City Council.  See Va. Code Ann. § 36-4.

_____

[2] Under the former sign code, a "temporary sign" was "[a] sign or advertising display constructed of cloth, canvas, fabric, paper, plywood or other light material designed to be displayed and removed within [specified] time periods." Norfolk, Va., Code app. A § 16-3 (2012).  A "freestanding sign" was "[a]ny sign placed upon or supported by the ground independently of any other structure."  Id.  An "other than freestanding sign," or "wall sign," as it was colloquially described by the parties and by the district court, was "[a] sign fastened to the wall of a building or structure in such a manner that the wall becomes the supporting structure for, or forms the background surface of, the sign or a sign painted directly on the wall of the structure."  Id.

6

In April 2010, the NRHA initiated condemnation proceedings against Central Radio and several other landowners, allegedly intending to take and transfer the various properties to Old Dominion University (ODU).  Central Radio and the other landowners successfully opposed the taking in state court.  Although a trial court initially ruled in favor of the NRHA, that ruling was reversed on appeal by the Supreme Court of Virginia.  PKO Ventures, LLC v. Norfolk Redevelopment & Hous. Auth., 747 S.E.2d 826, 829-30 (Va. 2013) (holding that the NRHA lacked the statutory authority to acquire non-blighted property by eminent domain).  Accordingly, the condemnation proceeding against Central Radio was dismissed.  Norfolk Redevelopment & Hous. Auth. v. Central Radio Co., No. CL102965, 2014 WL 3672087 (Va. Cir. Ct. Apr. 15, 2014).

In March 2012, while the appeal was pending in state court, Central Radio's managers placed a 375-square-foot banner (the banner) on the side of Central Radio's building facing Hampton Boulevard, a major, six-lane state highway.  The banner depicted an American flag, Central Radio's logo, a red circle with a slash across the words "Eminent Domain Abuse," and the following message in rows of capital letters: "50 YEARS ON THIS STREET / 78 YEARS IN NORFOLK / 100 WORKERS / THREATENED BY / EMINENT

7

DOMAIN!"[3]  The plaintiffs intended that the banner "be visible for several blocks along Hampton Boulevard" and "make a statement about Central Radio's fight with the NRHA," which would constitute "a shout" rather than "a whisper."

An employee of ODU complained about the banner to a City official, who notified the City's zoning enforcement staff.  The City official did not identify the source of the complaint to zoning officials.  After investigating the matter, a zoning official informed Central Radio's managers that the banner violated the applicable size restrictions set forth in the former sign code.  At a later inspection, zoning officials noted that the plaintiffs had failed to bring the display into compliance with the former sign code, and ultimately issued Central Radio citations for displaying an oversized sign and for failing to obtain a sign certificate before installing the sign.[4]

_____

[3] The Appendix to this Opinion contains a photograph of the plaintiffs' display.

[4] At the time of the first visit, a City zoning official stated that Central Radio's banner could not exceed 40 square feet, because the building wall facing Hampton Boulevard was 40 feet long.  This calculation appeared to treat Central Radio's banner as an "other than freestanding sign" or "wall sign" under the size restrictions of the former sign code.  See Norfolk, Va., Code app. A § 16-8.3(c) (2012).  However, when City zoning officials returned to the Central Radio site less than a week later, they stated that Central Radio's banner could not exceed 60 square feet, a determination apparently based on the restrictions governing "temporary signs."  See id. § 16-8.3(a).  Ultimately, the written citation issued by the City required
(Continued)

In May 2012, the plaintiffs initiated a civil action to enjoin the City from enforcing the former sign code. The plaintiffs alleged that the former sign code was unconstitutional because it subjected their display to size and location restrictions, but exempted certain "flag[s] or emblem[s]" and "works of art" from any similar limitations. Although they contended that the former sign code constituted a content-based restriction subject to strict scrutiny, the plaintiffs argued in the alternative that the former sign code also failed to satisfy intermediate scrutiny. The plaintiffs further alleged that the former sign code's provision requiring them to obtain a sign certificate before erecting a display effectuated an impermissible prior restraint on speech, and that the City selectively applied the former sign code to the plaintiffs' display in a discriminatory manner. In addition to requesting declaratory relief and nominal damages, the plaintiffs moved for a temporary restraining order and a preliminary injunction.

The district court denied the plaintiffs' motions and, after discovery was completed, granted summary judgment in favor of the City. In doing so, the court concluded that the

Central Radio to reduce the size of its banner to 60 square feet or less.

9

provisions in the former sign code exempting flags, emblems, and works of art were content-neutral. Applying intermediate scrutiny, the court held that the former sign code was a constitutional exercise of the City's regulatory authority. Further, the court held that the challenged sign ordinance exemptions were reasonably related to the City's interests in promoting traffic safety and aesthetics, because such exempted displays "are less likely to distract drivers than signs" and "are commonly designed to be aesthetically pleasing." In reaching this conclusion, the court also rejected the plaintiffs' prior restraint and selective enforcement claims. After the court entered final judgment, the plaintiffs filed this appeal.[5]

We heard argument and issued a decision consistent with our then-applicable case law, which affirmed the district court's judgment. Central Radio petitioned for certiorari to the Supreme Court, which granted the petition, vacated our opinion,

---

[5] We disagree with the City's contention that the district court abused its discretion in extending the deadline for filing the appeal after finding that any neglect by plaintiffs' counsel was excusable. Cf. Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 532 n.2 (4th Cir. 1996) (observing that the decision to grant an enlargement of time upon a showing of excusable neglect "remains committed to the discretion of the district court"). The district court did not exceed its discretion in excusing a brief delay that did not prejudice the defendant or result from any bad faith on the plaintiffs' part. See, e.g., Salts v. Epps, 676 F.3d 468, 474-75 (5th Cir. 2012).

and remanded for us to reconsider the case in light of its June 2015 decision in Reed.  Cent. Radio Co. v. City of Norfolk, 776 F.3d 229 (4th Cir. 2015), vacated and remanded, 135 S. Ct. 2893 (2015).  We later requested that the parties file supplemental briefing on that issue.

Following the parties' supplemental briefing, the City filed a motion suggesting that certain of the plaintiffs' requests for relief are now moot in light of the City's decision in October 2015 to amend the former sign code to comply with Reed.  The current sign code (the amended sign code) no longer exempts certain flags, emblems, and works of art from regulation, but does specify that works of art and flags are "examples of items which typically do not satisfy" the code's definition of "sign."  See Norfolk, Va., Ordinance 46,108 Ex. A § 2-3 (Oct. 27, 2015).  The amended sign code also imposes a time limit on the City's decision to issue or deny a sign certificate by deeming a request approved if the City has not acted within a prescribed period.  Id. § 16-10.2(b).  The plaintiffs oppose the City's request that portions of the appeal be dismissed as moot.

II.

A.

The parties' main arguments on appeal concern whether the former sign code was a content-neutral restriction on speech reviewed under intermediate scrutiny, or a content-based restriction subject to strict scrutiny. As we explain below, we agree with the plaintiffs that, under Reed, the former sign code was a content-based restriction that cannot withstand strict scrutiny.

1.

We begin by considering the City's contention that certain of the plaintiffs' requests for relief are now moot because the amended sign code does not exclude flags, emblems, and works of art from the definition of "sign." Under the mootness doctrine, we do not have jurisdiction over a case if an actual controversy does not exist at the time of appeal. See Brooks v. Vassar, 462 F.3d 341, 348 (4th Cir. 2006). As relevant here, "[w]hen a legislature amends . . . a statute, a case challenging the prior law can become moot even where re-enactment of the statute at issue is within the power of the legislature," so long as re-enactment does not appear probable. Id. (citation and internal quotation marks omitted).

The City appears to concede that the plaintiffs' request for retrospective relief in the form of nominal damages, based

12

on an alleged unconstitutional content-based restriction on speech, is not moot. We agree. See Covenant Media of S.C., LLC v. City of N. Charleston, 493 F.3d 421, 429 n.4 (4th Cir. 2007) (holding that a plaintiff's challenge to a later-amended ordinance was not moot, because the plaintiff sought nominal and compensatory damages).

We conclude, however, that the plaintiffs' request for prospective injunctive relief is moot, because the challenged language of the former sign code exempting certain flags, emblems, and works of art from regulation is no longer in force. In light of the City's submission that it amended the former sign code to comply with the Court's decision in Reed, we are confident that there is "little likelihood" that the City will re-enact the prior version of the ordinance. Am. Legion Post 7 of Durham, N.C. v. City of Durham, 239 F.3d 601, 606 (4th Cir. 2001). We therefore dismiss the portion of this appeal relating to the plaintiffs' request for prospective relief on this claim.

2.

We turn to consider whether the former sign code imposed a content-neutral or a content-based restriction on speech. In evaluating the content neutrality of a sign regulation restricting speech, we focus on the Supreme Court's decision in Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). We recently observed that this decision conflicted with, and therefore

13

abrogated, our Circuit's previous formulation for analyzing content neutrality, in which we had held that "[t]he government's purpose is the controlling consideration." Cahaly v. LaRosa, 796 F.3d 399, 405 (4th Cir. 2015) (quoting Clatterbuck v. City of Charlottesville, 708 F.3d 549, 555 (4th Cir. 2013)); see, e.g., Clatterbuck, 708 F.3d at 556 (describing that we applied a "pragmatic rather than formalistic approach to evaluating content neutrality" under which a regulation "is only content-based if it distinguishes content with a censorial intent") (citation and internal quotation marks omitted).

As we explained in Cahaly, the Supreme Court in Reed rejected such an approach. Instead, the Court held that at the first step of the content neutrality analysis, the government's justification or purpose in enacting a sign regulation is irrelevant. Cahaly, 796 F.3d at 405. Accordingly, under the holding in Reed, "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." Reed, 135 S. Ct. at 2227. Only when a regulation does not expressly draw distinctions based on a sign's communicative content may we examine, at the second step of the Reed analysis, whether the regulation "cannot be 'justified without reference to the content of the regulated speech,' or . . . [was] adopted by the government 'because of disagreement with the message [the

14

speech] conveys.'"  Id. (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)).

Although we considered a sign ordinance with exemptions similar to those presented by this appeal in Brown v. Town of Cary, 706 F.3d 294 (4th Cir. 2013), in that case we applied an analysis that is no longer valid due to the Supreme Court's decision in Reed.  Indeed, the panel in Brown was bound by our earlier precedent, thereby moving directly to the second step of the Reed analysis.  See id. at 304-05 (determining that exemptions for "public art" and governmental or religious "holiday decorations" were reasonably related to government interests in traffic safety and aesthetics, justifying application of intermediate scrutiny).

Now informed by the Supreme Court's directives in Reed, we begin our analysis by considering whether the City's former sign code "applie[d] to particular speech because of the topic discussed or the idea or message expressed." Reed, 135 S. Ct. at 2227.  Based on Reed, we hold that the City's regulation was a content-based restriction of speech.  The former sign code exempted governmental or religious flags and emblems, but applied to private and secular flags and emblems.  In addition, it exempted "works of art" that "in no way identif[ied] or specifically relate[d] to a product or service," but it applied to art that referenced a product or service.  On its face, the

15

former sign code was content-based because it applied or did not apply as a result of content, that is, "the topic discussed or the idea or message expressed." Id.; see also Cahaly, 796 F.3d at 405 (holding South Carolina's anti-robocall statute is content-based regulation because it "applies to calls with a consumer or political message but does not reach calls made for any other purpose"); Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1264-66 (11th Cir. 2005) (applying the same test articulated in Reed to a city sign code, and holding that an exemption applicable to "flags and insignia only of a 'government, religious, charitable, fraternal, or other organization'" was "plainly content based" because "some types of signs are extensively regulated while others are exempt from regulation based on the nature of the messages they seek to convey").

3.

Because the former sign code was a content-based regulation of speech, we apply strict scrutiny in determining its constitutionality. Reed, 135 S. Ct. at 2231. Under this standard, the government must show that the regulation "further[ed] a compelling interest and [wa]s narrowly tailored to achieve that interest." Id. (quotation omitted).

With respect to narrow tailoring, we require the government to prove that no "less restrictive alternative" would serve its

16

purpose. United States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 813 (2000). A regulation is unconstitutionally overinclusive if it "unnecessarily circumscrib[es] protected expression," Republican Party of Minn. v. White, 536 U.S. 765, 775 (2002) (quotation omitted), and is fatally underinclusive if it "leav[es] appreciable damage to [the government's] interest unprohibited," Reed, 135 S. Ct. at 2232 (quotation omitted).

The former sign code was enacted to promote the City's "physical appearance" and to "reduce the distractions, obstructions and hazards to pedestrian and auto traffic." Although interests in aesthetics and traffic safety may be "substantial government goals," Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507-08 (1981) (plurality opinion), neither we nor the Supreme Court have ever held that they constitute compelling government interests. See, e.g., Neighborhood Enters., Inc. v. City of St. Louis, 644 F.3d 728, 738 (8th Cir. 2011) (stating that interests in aesthetics and traffic safety, "while significant, have never been held to be compelling"); McCormack v. Twp. of Clinton, 872 F. Supp. 1320, 1325 n.2 (D.N.J. 1994) (noting that "while courts certainly have recognized states' and municipalities' interests in aesthetics and safety, no court has ever held that these interests form a compelling justification for a content-based restriction of political speech"). The City's proffered evidence on this point

17

fell far below any threshold by which a trier of fact could conclude that a compelling government interest existed. See Dimmitt v. City of Clearwater, 985 F.2d 1565, 1569-70 (11th Cir. 1993) ("The deleterious effect of graphic communication upon visual aesthetics and traffic safety, substantiated here only by meager evidence in the record, is not a compelling state interest of the sort required to justify content based regulation of noncommercial speech.").

Even if we were to assume, however, that the City's asserted interests provided compelling justification for content-based restrictions of speech, the City has failed to show that its restrictions were narrowly tailored to serve those interests. Indeed, just as in Reed, the City's exemptions from the former sign code were "hopelessly underinclusive." 135 S. Ct. at 2231.

With respect to the City's stated interest in preserving aesthetic appeal, for example, the flag of a private or secular organization was "no greater an eyesore" than the flag of a government or religion, id. (quoting City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 425 (1993)), and works of art that referenced a product or service did not necessarily detract from the City's physical appearance any more than other works of art. Yet, the former sign code allowed the unlimited proliferation of governmental and religious flags, as well as

18

works of art that met the City's dubious criterion, while sharply restricting the number and size of flags and art bearing other messages.  See Dimmitt, 985 F.2d at 1570 (stating that the asserted interests in aesthetics and traffic safety "clearly are not served by the distinction between [exempted] and other types of flags; therefore, the regulation is not 'narrowly drawn' to achieve its asserted end").

The City also has not shown that limiting the size and number of private and secular flags, as well as works of art that referenced products or services, was necessary to eliminate threats to traffic safety.  There is no evidence in the record that secular flags were any more distracting than religious ones, or that a large work of art displaying a reference to a product threatened the safety of motorists any more than any other large, exempted pieces of artwork.

Given the underinclusiveness of the former sign code, the City has failed to satisfy its burden of proving that its restriction of speech was narrowly tailored to further a compelling government interest.  Accordingly, we conclude that the former sign code fails strict scrutiny, and therefore was unconstitutional under the First Amendment.[6]

---

[6] Given our conclusion that the former sign code was unconstitutional, we need not reach the plaintiffs' alternative argument that the former sign code's requirement that a
(Continued)

B.

The plaintiffs also argue that the City selectively enforced the former sign code in violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment when the City issued the citations to the plaintiffs but allowed analogous displays to stand unchallenged. A selective enforcement claim of this nature requires a plaintiff to demonstrate that the government's enforcement process "had a discriminatory effect and that it was motivated by a discriminatory purpose." Wayte v. United States, 470 U.S. 598, 608 (1985). Thus, a plaintiff must show not only that similarly situated individuals were treated differently, but that there was "clear and intentional discrimination." Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 825 (4th Cir. 1995) (citing Washington v. Davis, 426 U.S. 229, 239 (1976)).

Even assuming, without deciding, that the City's past refusal to enforce strictly the former sign code constituted evidence of discriminatory effect,[7] dismissal of the plaintiffs'

---

certificate be obtained before displaying a sign, without imposing time limits or standards on the City's method for granting such certificates, constituted an impermissible prior restraint on speech under the First Amendment.

[7] On appeal, the City appears to have conceded that it declined to enforce the former sign code against the oversized electronic message board of a local museum, but maintains that "Central Radio failed to show that the decision to forego (Continued)

selective enforcement claim was proper because there was insufficient evidence that the City was motivated by a discriminatory intent. We have recognized several factors as probative in determining discriminatory intent, including:

> (1) evidence of a "consistent pattern" of actions by the decisionmaking body disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account any history of discrimination by the decisionmaking body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decisionmakers on the record or in minutes of their meetings.

Sylvia Dev., 48 F.3d at 819 (citing Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266-68 (1977)).

None of these factors weighs in the plaintiffs' favor. Although the plaintiffs attempt to impugn the City's motives in enforcing the former sign code against their banner protesting the use of eminent domain by the NRHA, the record is devoid of evidence that the City attempted to reduce the size of Central Radio's sign because the City disagreed with Central Radio's message or sought to suppress a message that was critical of the NRHA, an independent entity. Also absent from the record is any

---

enforcement was motivated by a desire to favor some particular message."

indication of "significant departures from normal procedures" by City zoning officials, id., who received a complaint about a sign, conducted an investigation, consulted with one another, and issued Central Radio a verbal warning followed by written citations.

We agree with the district court that the City's past failure to enforce the former sign code strictly, and the City's more zealous efforts to do so since the commencement of this litigation, are not sufficient to substantiate the "invidiously discriminatory intent" that is required of a selective enforcement claim. Sylvia Dev., 48 F.3d at 819 (citations and internal quotation marks omitted). Instead, the plaintiffs must show "that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Id. at 819 n.2 (citation and internal quotation marks omitted). Such evidence is wholly lacking in this case. Accordingly, we affirm the district court's award of summary judgment on the plaintiffs' selective enforcement claim.

III.

Finally, the plaintiffs maintain that the amended sign code continues to impose an unconstitutional content-based restriction on speech by listing governmental flags and works of

22

art as examples of items that typically will not qualify as signs. We decline to consider this new challenge to the amended sign code in the first instance. We also decline to consider the plaintiffs' argument that the amended sign code continues to impose an unconstitutional prior restraint despite the time limits included in the amended sign code. On remand, the district court is free to consider any new claims or arguments the plaintiffs wish to raise related to the amended sign code, as the court deems appropriate.

For the foregoing reasons, we dismiss the appeal in part, and we affirm in part and reverse in part the district court's judgment. We remand the issue of nominal damages on Count Two to the district court for a determination in the first instance.

DISMISSED IN PART, AFFIRMED IN PART,
REVERSED IN PART, AND REMANDED

