**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1767

KENNETH LUCERO,

                Plaintiff - Appellant,

        v.

WAYNE A. EARLY; MAYOR AND CITY COUNCIL OF BALTIMORE;
BALTIMORE CITY POLICE DEPARTMENT,

                Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
J. Frederick Motz, Senior District Judge.  (1:13-cv-01036-JFM)

Argued:  September 12, 2017                          Decided:  October 13, 2017

Before THACKER and HARRIS, Circuit Judges, and Norman K. MOON, Senior District
Judge for the Western District of Virginia, sitting by designation.

Vacated and remanded by published opinion.  Judge Thacker wrote the opinion, which
Judge Harris and Judge Moon joined.

**ARGUED**: Sean Robert Day, LAW OFFICE OF SEAN R. DAY, Greenbelt, Maryland,
for Appellant.  Steven John Potter, BALTIMORE CITY DEPARTMENT OF LAW,
Baltimore, Maryland, for Appellees.  **ON BRIEF**: David E. Ralph, City Solicitor, Glenn
T. Marrow, Chief Solicitor, Kara Lynch, Assistant City Solicitor, Ashley McFarland,
Assistant City Solicitor, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore,

Maryland, for Appellees.

———————————

THACKER, Circuit Judge:

Kenneth Lucero ("Appellant") was arrested in April 2010 after leafleting outside a Baltimore arena during a performance of the Ringling Brothers and Barnum & Bailey Circus ("Circus"). Specifically, he was arrested for failing to confine his leafleting to an area designated for protest activities, as set forth in a protocol formulated by Baltimore's legal department in 2004 ("Protocol"). Appellant filed suit in the District of Maryland, challenging the constitutionality of the Protocol.

Three years ago, we addressed a challenge to the same Protocol. *See Ross v. Early*, 746 F.3d 546 (4th Cir. 2014). In that case, Aaron Ross likewise failed to confine his leafleting activities to the designated areas, was arrested, and filed suit challenging the constitutionality of the Protocol. The district court upheld the Protocol, and we affirmed. *See id.* at 549.

In the instant case, the district court dismissed Appellant's complaint, reasoning that this court had already considered his constitutional claim in *Ross*. We disagree. Significantly, in *Ross*, the parties entered into a stipulation that dictated the level of constitutional scrutiny, but the parties to the instant case did not. Moreover, the district court in the instant case did not consider an intervening relevant Supreme Court decision, *McCullen v. Coakley*, 134 S. Ct. 2518 (2014), and did not have the benefit of another, *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). For these reasons, we vacate and remand for further proceedings.

3

I.

The First Mariner Arena ("Arena") is a sports and entertainment venue in downtown Baltimore. Once a year, the city of Baltimore leases the Arena to Feld Entertainment for performances of the Circus. The Circus attracts thousands of patrons for weekday performances, along with activists objecting to the Circus's treatment of animals. The activists have engaged in leafleting and, occasionally, sign holding and chanting.

Following an incident in 2003, during which the area around the Arena experienced traffic and pedestrian flow problems on the day of a Circus performance, Baltimore's legal department formulated the Protocol and distributed it in a 2004 email. Thereafter, the Protocol was circulated annually in similar form in anticipation of the Circus's yearly visit. In keeping with tradition, Baltimore's chief solicitor once again distributed the Protocol in email form to city officials on March 25, 2009. The email had the subject line "Circus Protestors" and stated the following language:[1]

> For the past several years the Police Department in conjunction with the Law Department has planned for handling the movement of attendees and protesters around the Baltimore Arena during the Ringling Bros. Circus. The goal of the plan, as always, is to allow attendees to have easy access to the Arena entrances while providing ample opportunities for those who wish to express their views about the Circus. The plan has worked well in the past and remains the same for this year . . . . The plan is as follows:

---

[1] The Protocol emails sent in previous years (including the one in *Ross*) contained similar subject lines such as "Plan for Circus Protesters" (March 2006) and "Plan for Circus pedestrian flow at the Baltimore Arena" (March 2007).

1. East side of Arena (Hopkins Place) – Any protesters will be asked to move to the sidewalk between the Arena and Hopkins Place. This would help alleviate any congestion problems at the main entrance.

2. North side of Arena (Baltimore Street) – Any protesters will be directed to stay within the brick areas of the sidewalk, approximately 13 feet wide between the curb and the middle of the sidewalk. This provides the remainder of the sidewalk closer to the building for foot traffic to access Baltimore Street and main entrances.

3. West side of Arena (Howard Street) – Any protesters will be asked to remain on the corner of Howard and Baltimore streets or to move to the middle of the block south of the Howard Street entrance. This will allow sufficient room for attendees to access the Arena from the Howard Street entrance.

Anyone who is [sic] refuses to obey these guidelines, will receive at least two verbal requests for compliance prior to an officer making an arrest.

J.A. 50 (emphasis omitted).[2]

Appellant's amended complaint alleges that on April 17, 2010, he leafleted on the day of a Circus performance outside of the Arena. Baltimore police officers told Appellant about the Protocol and ordered him to confine his leafleting to the permitted area. When Appellant failed to comply with the officers' directives, he was arrested by Officer Wayne Early and later released without formal charges. He thereafter filed suit in

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal. Although there is no 2010 email in the record, the amended complaint alleges that the Protocol in effect at the time of his arrest in 2010 was the same as the 2009 Protocol. At this stage, we accept that allegation as true. *See Matherly v. Andrews*, 859 F.3d 264, 274 (4th Cir. 2017).

the District of Maryland against the Baltimore City Police Department ("BPD"), the Mayor and City Council of Baltimore ("City"), and Officer Early (collectively, "Appellees"). He raised federal constitutional claims against all Appellees pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 36 U.S. 658, 694 (1978), and state law claims alleging false arrest and unreasonable seizure against Officer Early alone. As a basis for his claims, he alleges that the Protocol and its enforcement violated his First Amendment rights, as he contends the only effective way to reach Circus attendees through leafleting is to be within arm's reach and conversational distance, and the invisible barrier imposed by the Protocol diminished the efficacy of his speech.

The City and BPD moved to dismiss the complaint on the basis that our decision in *Ross v. Early*, 746 F.3d 546 (4th Cir. 2014), had resolved the constitutional issue underlying Appellant's claims. The district court granted that motion. Appellant appealed, but we dismissed the appeal because claims remained outstanding against Officer Early. The district court then dismissed the claims against Officer Early, and Appellant timely noted this appeal.

## II.

We review a district court's grant of a motion to dismiss de novo. *See Matherly v. Andrews*, 859 F.3d 264, 274 (4th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "We accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Id.*

6

III.

We must decide whether *Ross v. Early*, 746 F.3d 546 (4th Cir. 2014), commands dismissal of Appellant's complaint. In that case, Ross claimed the Protocol was an invalid time, place, and manner restriction on First Amendment activity. *See id.* at 549. Ross and the City both moved for summary judgment, but the district court denied the cross-motions because "the level of scrutiny applicable to the P[rotocol] turned on a disputed question of material fact, i.e., whether the P[rotocol] was of general application, like an ordinance, or specifically targeted to circus and animal welfare protestors, like an injunction." *Id*. at 551 (internal quotation marks omitted).

At that point, the parties to the *Ross* litigation, "[f]aced with an imminent jury trial that would determine the level of scrutiny applicable to the P[rotocol]," entered into a stipulation agreeing that the Protocol was "generally applicable toward all expressive activity" and "not targeted toward restricting activities of circus and animal welfare street protestors specifically." *Ross*, 746 F.3d at 551–52 (alteration and internal quotation marks omitted). The district court then determined intermediate scrutiny should apply and upheld the Protocol as a reasonable time, place, and manner restriction. *See id.* at 552. On appeal, Ross "accept[ed] intermediate scrutiny as the applicable standard," and we affirmed. *Id.*

In the instant action, however, the parties have not stipulated to the general applicability of the Protocol. To the contrary, in the district court the parties disputed the level of scrutiny that should apply, and they continue to do so on appeal. *See* Mem. Supp. Motion to Dismiss, *Lucero v. Early*, No. 1:13-cv-1036 (D. Md. filed Nov. 14,

7

2014), ECF No. 29–1 at 3; Resp. Mot. to Dismiss (filed Dec. 2, 2014), ECF No. 30 at 13; *compare* Appellant's Br. 27 (contending that strict or heightened scrutiny should apply), *with* Appellees' Br. 19 (contending that intermediate scrutiny should apply).

This is a critical distinction between this case and *Ross*, as a dispute of fact on the general applicability of the Protocol necessitates an analysis of whether the Protocol is content neutral. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("[E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are *justified without reference to the content of the regulated speech*, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." (internal quotation marks omitted) (emphasis supplied)); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992) (explaining content based time, place, and manner regulations are subject to strict scrutiny); *see also McCullen v. Coakley*, 134 S. Ct. 2518, 2530 (2014) (considering the content neutrality question first to determine level of scrutiny). This court in *Ross* never had the chance to decide whether the Protocol is content neutral in the absence of a general applicability stipulation; therefore, that decision cannot be fairly said to dictate the outcome here.

Moreover, two Supreme Court decisions issued after *Ross* have shed more light on the content neutrality question. In *McCullen v. Coakley*, the Court concluded that an Act creating a buffer zone around abortion clinics, which precluded leafleting within a certain radius, was content neutral, even though the law itself applied only to "reproductive health care facilit[ies]." 134 S. Ct. at 2525. The Court reasoned, "Whether petitioners

8

violate the Act depends not on what they say, but simply on where they say it." *Id.* at 2531 (citation and internal quotation marks omitted). Indeed, the Court explained, "petitioners can violate the Act merely by standing in a buffer zone, without displaying a sign or uttering a single word." *Id.* The Court also noted, "The Act would be content based if it required 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." *Id.* (citing *F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984)).

A year later, in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), the Supreme Court concluded that a town's sign ordinance was content based, and thus subject to strict scrutiny, because it placed restrictions on signs based on their "communicative content." *Id.* at 2227. The Court explained that content neutrality should be analyzed in two steps. First, a court should ask whether a law "on its face draws distinctions based on the message a speaker conveys." *Id.* (internal quotation marks omitted); *see also Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) ("'[T]he crucial first step in the content-neutrality analysis' is to 'determin[e] whether the law is content neutral on its face.'" (quoting *Reed*, 135 S. Ct. at 2228)). If so, the law is content based regardless of "the government's justification or purpose" in enacting it. *Cent. Radio Co. Inc. v. City of Norfolk*, 811 F.3d 625, 632 (4th Cir. 2016). Second, even if the law is facially content neutral, it can nonetheless be considered content based if it "cannot be justified without reference to the content of the regulated speech, or [it was] adopted by the government because of disagreement with the message the speech conveys." *Reed*, 135 S. Ct. at 2227 (alterations and internal quotation marks omitted). Because the government's purpose in

9

adopting a law is no longer "the controlling consideration," *Reed* was a crucial decision, "abrogat[ing] our Circuit's previous formulation for analyzing content neutrality." *Cent. Radio Co.*, 811 F.3d at 632 (citing *Cahaly*, 796 F.3d at 405).

In light of *McCullen* and *Reed*, there is much in dispute that may be critical to the content neutrality question in this case, including but not limited to whether the Protocol required officers to check the content of the leaflets before engaging in enforcement measures (i.e., whether violation of the Protocol depends on "what [protestors] say," not just where they say it), and, if facially content neutral, whether the Protocol was adopted because of a disagreement with the Appellant's message.

The district court failed to take account of the factual dispute below, did not consider *McCullen*, and did not have the benefit of *Reed*. We therefore remand this action for the district court to analyze in the first instance whether the Protocol is content neutral and, in turn, the correct scrutiny to apply, along with necessary further proceedings as to all counts in the amended complaint.

IV.

For the foregoing reasons, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

10