**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 19-1151**

_____

BRUCE & TANYA & ASSOCIATES, INC.,

   Plaintiff - Appellant,

 v.

BOARD OF SUPERVISORS OF FAIRFAX COUNTY, VIRGINIA; FAIRFAX COUNTY, VIRGINIA; STEPHEN BRICH, as Commissioner of Highways for the Commonwealth of Virginia,

   Defendants - Appellees,

 and

JACK WEYANT, as Director of the Department of Code Compliance,

   Defendant.

_____

**No. 19-1153**

_____

BRUCE & TANYA & ASSOCIATES, INC.,

   Plaintiff - Appellee,

 v.

BOARD OF SUPERVISORS OF FAIRFAX COUNTY, VIRGINIA; FAIRFAX COUNTY VIRGINIA;

   Defendants - Appellants,

 and

JACK WEYANT, as Director of the Department of Code Compliance; STEPHEN BRICH, as Commissioner of Highways for the Commonwealth of Virginia,

Defendants.

---

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:17-cv-01155-LMB-TCB)

---

Submitted: March 27, 2020                                    Decided: May 10, 2021

---

Before AGEE, THACKER, and RUSHING, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Rushing wrote the opinion, in which Judge Agee and Judge Thacker joined.

---

Jesse R. Binnall, HARVEY & BINNALL, PLLC, Alexandria, Virginia, for Appellant/Cross-Appellee. Mark R. Herring, Attorney General, Donald D. Anderson, Deputy Attorney General, Toby J. Heytens, Solicitor General, Matthew R. McGuire, Principal Deputy Solicitor General, Michelle S. Kallen, Deputy Solicitor General, Brittany M. Jones, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for State Appellee. Elizabeth D. Teare, County Attorney, Sarah A. Hensley, Assistant County Attorney, OFFICE OF THE COUNTY ATTORNEY, Fairfax, Virginia, for Appellees/Cross-Appellants.

---

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

Virginia has long regulated outdoor advertising visible from its highways to promote the safety of travelers and the aesthetics of its roadways. This case concerns two provisions of Virginia's statutory scheme, Va. Code Ann. § 33.2-1224, which forbids signs within the limits of any highway, and Va. Code Ann. § 33.2-1204, which lists exceptions to various signage regulations. Plaintiff Bruce & Tanya & Associates, Inc. (BTA), a real estate firm that uses roadside signs to advertise, contends that Section 1224, as modified by Section 1204, is an unlawful prior restraint, an impermissible content-based restriction on speech, and unconstitutionally vague. BTA further alleges that Section 1224 has been selectively enforced against it.

The defendants—Fairfax County and its Board of Supervisors (collectively, the County) and Stephen Brich, the Commissioner of Highways for the Commonwealth of Virginia—are State and local government actors with authority to enforce Section 1224. The district court granted judgment for the defendants on some claims and dismissed the remainder. After dismissal, the County sought attorney's fees from BTA, which the district court denied. BTA appealed from the court's final judgment, and the County cross-appealed the denial of fees. For the reasons that follow, we affirm the district court's judgment in both cases.

I.

A.

Virginia regulates outdoor advertising "in areas adjacent to the rights-of-way of the highways within the Commonwealth" according to a detailed scheme of interconnected

3

regulations. Va. Code Ann. § 33.2-1200(A); *see id.* §§ 33.2-1200–33.2-1234. Different statutory provisions apply depending on the type of advertising (for example, billboards or on-premises signs); where the advertising is located (for example, within a municipality or not); and whether the advertising is visible from particular roads (for example, an Interstate System, National Highway System, or federal-aid primary highway), among other distinctions. Some signs are absolutely forbidden—such as an advertisement prominently displaying the word "stop" or "danger," *id.* § 33.2-1216(3)—while others are allowed with a permit, *see*, *e.g.*, *id.* § 33.2-1208.

Section 1224 forbids "[s]igns or advertisements placed within the limits of the highway" as "a public and private nuisance." *Id.* § 33.2-1224. Any person posting a sign or advertisement within the limits of any highway is subject to a $100 civil penalty per occurrence. The Commissioner or his representative also may seek to enjoin a recurring violator. Section 1224 does not apply to signs regulated under other provisions of the statutory scheme.

Section 1204 exempts certain categories of signs and advertisements from some, but not all, of the outdoor advertising regulations. In 2018, Virginia amended this section to explicitly state that six of the listed categories of signs are exempt from Section 1224. *See id.* § 33.2-1204(5), (6), (12), (13), (15), (19).

B.

BTA operates in a five square mile area of Fairfax County. As part of its business, BTA posts signs advertising its clients' properties, often placing those signs within the limits of the highway. In April 2012, the Virginia Department of Transportation notified

4

BTA that it was violating Section 1224. After further warnings, the Department of Transportation began fining BTA for its continued violations. Between April 2012 and March 2013, the Department of Transportation fined BTA on at least eleven occasions.

In March 2013, Virginia's Commissioner of Highways signed a cooperative agreement with the Fairfax County Board of Supervisors authorizing the latter to enforce Section 1224. Pursuant to that Agreement, the Board directed the County to establish a sign removal program and begin enforcing Section 1224 on a designated subset of roads in Fairfax County. For the first three years of the program, the County removed prohibited signs but issued no fines. In 2016, the County adopted the Department of Code Compliance Illegal Right-of-Way Signage Inspection and Enforcement Program Policy (DCC Policy). In accord with the DCC Policy, the County began sending warning letters to repeat offenders and, if violations persisted, issuing citations fining those determined to be "egregious violators."

BTA was an egregious violator of Section 1224. From March to October 2016, the County fined BTA 89 times, and from May to October of the same year BTA received approximately 21% of all fines issued. In December 2016, the Board sued BTA in Virginia state court for payment of outstanding fines and exercised its delegated authority under Section 1224 to seek an injunction barring BTA from further violations. BTA responded with a counterclaim raising constitutional defenses but subsequently dismissed its counterclaim and initiated this federal suit.[1]

---

[1] The state court has stayed its proceedings during the pendency of this action.

C.

BTA sued the County and Virginia's Commissioner of Highways in federal court, seeking declaratory and injunctive relief as well as damages and fees pursuant to 42 U.S.C. §§ 1983 and 1988. In April 2018, while this suit was pending in the district court, the Virginia legislature amended Section 1204 to clarify that six categories of signs are exempt from Section 1224. The County and the Commissioner separately moved to dismiss, and the district court granted their motions. The court held that Section 1224—considered with the exceptions in Section 1204 as amended in 2018—was not an unconstitutional restriction on speech and was not unconstitutionally vague.[2] Regarding pre-amendment enforcement, the court determined that the County was susceptible to damages under Section 1983 for its policy of enforcing Section 1224 but that dismissal was warranted because the pre-amendment statutory scheme could be construed to be constitutional. The court dismissed BTA's prior restraint claim as unripe and dismissed its selective enforcement claim for failure to adequately plead discriminatory intent. The County subsequently sought an award of attorney's fees under 42 U.S.C. § 1988, which the district court denied.

BTA and the County each appealed to this Court. We review de novo orders of dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and orders granting summary

---

[2] Finding no genuine dispute of material fact on these issues, the district court granted judgment for the defendants and denied BTA's motion for summary judgment and injunctive relief. BTA was not denied a reasonable opportunity to present all pertinent material, so its procedural quibble with this ruling fails. *See* Fed. R. Civ. P. 12(d); *Herbert v. Saffell*, 877 F.2d 267, 270 (4th Cir. 1989).

judgment. *See Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140, 142 (4th Cir. 2018) (Rule 12(b)(6)); *Demetres v. E.W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015) (Rule 12(b)(1)); *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (2020) (summary judgment). We review for abuse of discretion a district court's decision to grant or deny attorney's fees under Section 1988. *Mercer v. Duke Univ.*, 401 F.3d 199, 203 (4th Cir. 2005).

## II.

Before we consider the merits of BTA's constitutional challenges we must address two threshold questions the defendants raised below and reiterate on appeal: standing and ripeness. Both are jurisdictional. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013); *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001). Accordingly, our obligation of ensuring jurisdiction requires us to first examine those preliminary questions. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

## A.

Standing to sue is a doctrine rooted in the Constitution's limitation of federal-court jurisdiction to actual cases and controversies. *See* U.S. Const. art. III, § 2; *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To establish so-called Article III standing, a plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). These requirements ensure that a plaintiff invoking the jurisdiction of a federal court can show "a personal stake

7

in the outcome of the controversy." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (internal quotation marks omitted).

The defendants primarily argue that BTA cannot show that a favorable decision would redress its injury because, even if the present challenge to Section 1224 were to succeed, the Commissioner could enforce other Virginia signage statutes that allegedly forbid BTA from posting its signs where it currently does.[3] We disagree. BTA has standing to challenge Section 1224 because the Commissioner and the County have actually enforced that statute against it, citing Section 1224 as the only basis for removing BTA's signs and levying fines. The other provisions which the Commissioner claims could be enforced against BTA have not been. The hypothetical possibility that the Commissioner could choose in his discretion to enforce other regulations to prevent BTA ultimately from posting its signs does not render the claims advanced in this case, regarding the only regulation actually enforced against BTA, unredressable.

These facts distinguish the cases on which the Commissioner relies. In the sign-ordinance cases the Commissioner cites, favorable judicial decisions could not redress the plaintiffs' injuries because the plaintiffs challenged only *some* of the grounds on which the cities denied their permit applications, leaving other valid grounds for the denials unchallenged. *See Covenant Media of S.C., LLC v. City of North Charleston*, 493 F.3d

---

[3] The County is empowered to enforce only Section 1224; the Agreement does not delegate authority to the County to enforce any other state signage statutes. Accordingly, the County's standing argument depends on the Commissioner's ability to enforce other statutes independent of any restraint upon the County.

421, 430 (4th Cir. 2007); *Advantage Media, LLC v. City of Eden Prairie*, 456 F.3d 793, 797–798, 801 (8th Cir. 2006). The plaintiff's claim in *Doe v. Virginia Department of State Police* failed the redressability requirement because, even if the court ordered the defendant to implement the procedures the plaintiff sought or to grant her entry to the relevant property, under the state statutory scheme she would still need permission from a state court before she could enter the property, rendering it "purely speculative" whether any action by this Court would redress her injury. 713 F.3d 745, 757 (4th Cir. 2013). The *Doe* plaintiff's claims also lacked traceability and redressability because she had not attempted the lawful means of entering the property. *Id*. at 756. Therefore, it was speculative whether she would be denied and whether action by this Court would have any effect on her ability to enter the property. *Id.*

That situation is quite unlike this case, where BTA posted its signs and the Commissioner and the County removed them, citing Section 1224 as the only ground for removal. On appeal the Commissioner notes that signs require permits, *see* Va. Code Ann. § 33.2-1208, but no one removed BTA's signs for lack of a permit, nor does anyone argue that the Commissioner could grant a permit in disregard of Section 1224's prohibition on signs within the limits of any highway.

There can be little doubt that were BTA to prevail, the court could award relief that would alleviate the particular harm it has suffered: enforcement of Section 1224 to remove its signs and impose penalties. For purposes of assessing the third prong of the standing inquiry, that is all that is required.

9

B.

Having found that BTA has standing, we turn to the ripeness of its claims. The "basic rationale" of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967); *see also Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (noting the doctrine's constitutional and prudential roots). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

We have little difficulty rejecting the Commissioner's argument that BTA's claims are unripe because it has not availed itself of the permitting and licensure provisions in Virginia law. *See* Va. Code Ann. §§ 33.2-1205, 1208, 1216(7). Those provisions do not impose an exhaustion requirement, and their hypothetical availability is tangential to whether BTA's claims regarding the actual enforcement of Section 1224 against it are "appropriate for judicial resolution at this time." *Abbott Labs.*, 387 U.S. at 149. The defendants' actions enforcing Section 1224 by removing BTA's signs and imposing fines are "final and not dependent on future uncertainties" that would hamper our review. *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).

There is one exception. The district court correctly found BTA's prior restraint claim unripe because it is predicated on an injunction that has not been issued. The Board sued BTA in Virginia state court pursuant to Section 1224's authorization to "enjoin any recurring violator," which BTA alleges is an unconstitutional prior restraint on speech. A

10

prior restraint is a legal order forbidding speech "issued in advance of the time that [the speech will] occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal quotation marks omitted). While "[t]emporary restraining orders and permanent injunctions . . . are classic examples of prior restraints," *id.*, until an order forbidding speech issues, no such restraint has yet been imposed. Because the state court has not awarded the Board the injunction it seeks (and the proceedings have been stayed pending resolution of this action), BTA's prior restraint claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (internal quotation marks omitted); *see also Woodall v. Reno*, 47 F.3d 656, 658 (4th Cir. 1995) ("[W]e will not assume that a court would issue an injunction in violation of the well-established prior restraint doctrine."). Such a claim is not ripe for adjudication.

III.

The focus of BTA's suit is its request that the Commissioner and his delegees be prospectively enjoined from enforcing Section 1224, which it contends is constitutionally infirm. *See Ex parte Young*, 209 U.S. 123 (1908) (permitting injunctive relief against a state officer to restrain violations of federal law). BTA argues that Section 1224 violates its First Amendment right to freedom of speech because it is a content-based restriction on speech that is not narrowly tailored to serve a compelling governmental interest. It also argues that Section 1224 is unconstitutionally vague. For the reasons explained below, both of BTA's arguments fall short.

11

A.

The First Amendment, made applicable to the States (and local governments vested with state authority) by the Fourteenth Amendment, prohibits enactments that abridge the freedom of speech. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* Laws that are content neutral are "subject to a lower level of scrutiny." *Id.* at 166.

BTA does not allege that Section 1224 is unconstitutional when considered in isolation. Rather, BTA contends that Section 1224 becomes a content-based restriction on speech when the exceptions in Section 1204 apply to limit its scope. After the 2018 amendment, Section 1204 exempts six categories of signs from Section 1224's general prohibition on signs within the limits of the highway. *See* Va. Code Ann. § 33.2-1204(5), (6), (12), (13), (15), (19). Five relate exclusively to government speech, as BTA admits, and therefore pose no First Amendment problem. *Id.* § 33.2-1204(5), (6), (12), (13), (15). "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009); *see also Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005) ("[T]he Government's own speech . . . is exempt from First Amendment scrutiny."). Thus, the government is "entitled to say what it wishes, and to select the views that it wants to express." *Summum*, 555 U.S. at 467 (internal quotation marks omitted). While most of the five exemptions unquestionably draw distinctions based on the message conveyed—for example, warning

12

signs, signs relating to Red Cross emergency stations, and historical markers—the First Amendment is not offended by this preferential treatment because the government is the source of the message. *See Reed*, 576 U.S. at 175 (Alito, J., concurring) ("[G]overnment entities may . . . erect their own signs consistent with the principles that allow governmental speech," including "all manner of signs to promote safety, as well as directional signs and signs pointing out historic sites and scenic spots.").

The only remaining exception to Section 1224 in Section 1204 exempts "signs containing advertisements or notices that have been authorized by a county and that are securely affixed to a public transit passenger shelter that is owned by that county." Va. Code Ann. § 33.2-1204(19). This exemption is content neutral and therefore not subject to strict scrutiny. *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994) ("[L]aws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral."). BTA concedes that this exception is facially neutral and, although it notes the discretion vested in counties to authorize transit shelter advertisements, does not make any allegation about the manner in which the County exercises its discretion.

Determining that a restriction is content neutral does not end the First Amendment inquiry, as such regulations are still subject to "an intermediate level of scrutiny." *Turner*, 512 U.S. at 642. Nevertheless, a wide body of jurisprudence upholds content-neutral "time, place, and manner" restrictions that are "sufficiently justified and narrowly enough drawn." *Wall Distribs., Inc. v. City of Newport News*, 782 F.2d 1165, 1168 (4th Cir. 1986). "[E]ven in a public forum"—where First Amendment interests are at their zenith—"the government

13

may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 (1984)).

Section 1224's ban on signs within the limits of any highway, as modified by the transit shelter exception in Section 1204(19), satisfies the test for content-neutral time, place, and manner restrictions.[4]  The proffered governmental interests—ensuring driver safety and preserving aesthetic considerations on the highways—are undoubtedly significant under our precedent.  *See Arlington Cnty. Republican Comm. v. Arlington County*, 983 F.2d 587, 594 (4th Cir. 1993) ("promot[ing] aesthetics and traffic safety" are "substantial" government interests underlying regulation of temporary signage); *see also Ross v. Early*, 746 F.3d 546, 555 (4th Cir. 2014) ("maintaining the safety, order, and accessibility of its streets and sidewalks" is a substantial governmental interest justifying leafletting restriction (internal quotation marks omitted)); *Am. Legion Post 7 v. City of Durham*, 239 F.3d 601, 609 (4th Cir. 2001) ("[A] community's interest in preserving its aesthetic character is indeed a 'substantial interest.'").  The prohibition on private signage within the limits of any highway unless securely affixed to a county-owned transit shelter

---

[4] Because the statutes satisfy the more speech-protective standard, we need not decide how to characterize areas within the limits of the highway for purposes of First Amendment forum analysis.

14

promotes these interests by "keep[ing] the highways free of visual clutter, distracting images, and physical hazards" and does so "more effectively than plausible alternatives." *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty.*, 355 F. Supp. 3d 386, 409 (E.D. Va. 2018). The Commonwealth is not required to choose the "least restrictive or least intrusive means" of accomplishing its purpose but need only show, as it has here, that its regulation "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 798–799 (internal quotation marks omitted).

Finally, Sections 1224 and 1204 "leave open ample alternative channels" for BTA to communicate its message. *Id.* at 802. As the district court observed, the statutes govern only BTA's ability to post signs on government-owned land within the limits of a highway. They do not restrict BTA from "post[ing] advertisements on private land or in various forms of media," applying to display signs on public transit shelters, or seeking a permit to display advertisements "visible from" a highway. *Bruce & Tanya*, 355 F. Supp. 3d at 409 (citing Va. Code Ann. §§ 33.2-1204[19], 33.2-1205, 33.2-1208). BTA questions whether these options would be satisfactory alternatives to placing signs within the limits of the highway, but the available alternatives "need not be the speaker's first or best choice or provide the same audience or impact for the speech." *Ross*, 746 F.3d at 559 (internal quotation marks and alterations omitted). We agree with the district court that, while the statutes may impact BTA's preferred method of advertising, they leave open many reasonable means by which BTA can advertise its properties. As a result, Section 1224 does not unconstitutionally restrict BTA's speech.

15

B.

BTA also argues that Section 1224 is unconstitutionally vague because it does not define the phrase "within the limits of any highway." Absent a definition of this critical phrase, BTA contends, no one "reviewing th[e] statute could be certain what conduct is proscribed." BTA Opening Br. at 22.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). This precept is usually traced to our Constitution's guarantee of due process; when speech is regulated, the First Amendment buttresses that requirement "to ensure that ambiguity does not chill protected speech." *Id.* at 253–254; *see also Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 871–872 (1997). Yet due process demands a measure of clarity, not exactitude. Thus, a statute is too vague to be enforced consistent with due process only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Fox Television*, 567 U.S. at 253 (internal quotation marks omitted).

Section 1224 clears this standard. At the outset, we note that the Code defines "highway." *See* Va. Code Ann. § 33.2-1200(B). And BTA acknowledges that the Commonwealth uses the phrase "limits of the highway" to refer to the right-of-way upon which the highway sits. *See* J.A. 32 (Agreement authorizing the Board "to . . . remov[e] any signs or advertising located within the rights-of-way, in violation of [Section 1224]"). Indeed, BTA understands the phrase to carry this meaning, as its complaint alleges that

16

"many" of its signs are "posted immediately adjacent to highways and are often within the territorial limits of such highways." J.A. 16. BTA nevertheless contends that the phrase retains some ambiguity.

We agree with the district court that even if the phrase leaves room for debate about precisely how close a sign may be to the edge of the roadway, it is "not rendered unconstitutional simply because the legislature used descriptive rather than mathematical terms." *Bruce & Tanya*, 355 F. Supp. 3d at 412. The Supreme Court on more than one occasion has rejected vagueness challenges against enactments employing words or phrases at least as imprecise as "within the limits of any highway," if not more so. *See Grayned v. City of Rockford*, 408 U.S. 104, 111 (1972) (rejecting vagueness challenge to ordinance that prohibited activity "adjacent to" a school); *Cox v. Louisiana*, 379 U.S. 559, 568 (1965) (holding that a statute criminalizing demonstrations "in or near" a courthouse was not unconstitutionally vague). As the district court correctly concluded, "an 'ordinary person exercising ordinary common sense can sufficiently understand' the phrase," particularly given the context in which it is used and the harm Section 1224 is designed to mitigate. *Bruce & Tanya*, 355 F. Supp. 3d at 413 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 371–372 (4th Cir. 2012)). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward*, 491 U.S. at 794. For these reasons, BTA's vagueness challenge fails.

IV.

We turn now to the claims BTA advances solely against the County. First, BTA seeks to hold the County liable in damages for the alleged unconstitutionality of Section

17

1224 as modified by the pre-amendment version of Section 1204.  Second, BTA contends that the County selectively enforced Section 1224 in violation of the Equal Protection Clause.  The district court dismissed both claims.  Before addressing either, we must examine the statutory vehicle by which BTA has advanced its claims, 42 U.S.C. § 1983.

## A.

Section 1983 creates a remedial cause of action against any "person" acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" who deprives another of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  "Through [Section] 1983, Congress sought to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (internal quotation marks omitted).

The Supreme Court has held that "municipalities and other local government units [are] included among those persons to whom [Section] 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Under the doctrine announced in *Monell*, a local government entity can be sued under Section 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.*  A local governing body "cannot be held liable solely because it employs a tortfeasor"; instead, the constitutional harm must be the direct result of "action pursuant to official municipal policy of some nature." *Id.* at 691 (emphasis omitted); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[R]ecovery from a municipality is limited to . . . acts which the municipality has officially sanctioned or ordered.").  This "official policy requirement" is

18

intended to "make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479. Thus, "municipal liability under [Section] 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted).

Here, the alleged unconstitutional acts were without question undertaken pursuant to a formal directive from the Board: after entering into the Agreement with the Commissioner, the Board ordered the County to adopt an enforcement program, which ultimately took the form of the DCC Policy. But the County contends that it cannot be held responsible for the enforcement program in a Section 1983 claim because the program merely enforces state law. By implementing its policy, the County argues, it has acted as an agent of the Commissioner, taking actions pursuant to a statutory mandate over which it lacks the degree of control necessary for *Monell* liability.

We have not definitively addressed whether *Monell* liability can be predicated on a local government's policy of enforcing state law.[5] The majority of our sister circuits to consider the question have suggested that a local government can be subjected to *Monell* liability if it makes an independent choice to enforce or follow parameters set by state law, rather than being obliged to do so. *See Vives v. City of New York*, 524 F.3d 346, 353 (2d

---

[5] In *Bockes v. Fields*, we held that a county Board of Social Services could not be subject to *Monell* liability for a firing that violated the Fourteenth Amendment because it acted pursuant to criteria and procedures required by the State Board of Social Services. 999 F.2d 788, 791 (4th Cir. 1993). We concluded that the county Board had not exercised its own policymaking authority when it applied standards mandated by the State Board in firing the plaintiff. *Id.*

19

Cir. 2008); *Cooper v. Dillon*, 403 F.3d 1208, 1222–1223 (11th Cir. 2005); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993); *Evers v. Custer County*, 745 F.2d 1196, 1203–1204 (9th Cir. 1984). *But see Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791–792 (7th Cir. 1991).

We find *Vives* instructive. There the City of New York chose to enforce a New York criminal statute that was later found to infringe the First Amendment. 524 F.3d at 348. City police officers arrested and held Vives for allegedly violating the state statute, but the district attorney declined to prosecute. *Id.* at 348–349. Vives sued the City under Section 1983 for violating his First Amendment speech rights. The City argued it was not subject to *Monell* liability because a "municipality does not implement or execute a policy officially adopted and promulgated by its officers when it merely enforces the Penal Law of the State that created it." *Id.* at 350.

The Second Circuit rejected the City's maximal position. The court began from the premise that "[t]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." *Id.* (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)); *see also Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987). The *Vives* court reasoned that "[f]reedom to act is inherent in the concept of 'choice,'" and a state law "mandating enforcement" by local government officials cannot be considered the product of a conscious choice. *Vives*, 524 F.3d at 353. Local governments therefore "cannot be liable under *Monell* in th[at] circumstance." *Id.* By contrast, if a local government entity "decides to enforce a statute that it is authorized, but not required, to enforce, it may have created a . . . policy" for which it can be liable. *Id.* In sum, whether a local government

20

entity's policy of enforcing a state statute renders it susceptible to *Monell* liability turns on "whether a municipal policymaker has made a meaningful and conscious choice that caused a constitutional injury." *Id.* at 351.

B.

Having considered the parameters of Section 1983, we turn to BTA's claim that the County is liable for enforcing an unconstitutional state statute. BTA argues that Section 1224 violates the First Amendment not by itself but by virtue of exceptions to its coverage detailed in Section 1204. According to BTA, before the Virginia legislature amended Section 1204 in 2018, that statute excepted large swaths of signage from Section 1224 based on their content. BTA seeks to hold the County liable in damages for enforcing this allegedly unconstitutional statutory couplet.

We must first identify the relevant policy. *See Harris*, 489 U.S. at 385 ("[O]ur first inquiry in any case alleging municipal liability under [Section] 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."). The relevant County policy consists of the Agreement between the Commissioner and the Board and the DCC Policy created pursuant to that Agreement. The Agreement states that the Commissioner "desires the Board's assistance" in removing signs from the highways in Fairfax County and that the Board, after a public hearing on the matter, "expressed its desire and agreement" to enforce Section 1224 and collect the fines provided therein. J.A. 32. Accordingly, in the Agreement the Commissioner, pursuant to Va. Code Ann. § 33.2-1225, "authorize[d] the Board" to act as

his agent "for the purpose of removing any signs or advertising located within the rights-of-way in violation of [Section 1224]" and collecting the related fines.  J.A. 32.

The County can be held liable for its policy of enforcing Section 1224 because it consciously chose to enforce that particular state statute after requisite deliberation.  *See Vives*, 524 F.3d at 353.  Section 1225 authorizes—but does not require—Fairfax County to enter into a cooperative agreement with the Commissioner to enforce Section 1224.  *See* Va. Code Ann. § 33.2-1225(A).  Likewise, the Agreement authorizes but does not mandate the County to enforce Section 1224 and sets parameters on its enforcement.  Fairfax County's authority to enforce Section 1224 required the Board's acquiescence; it was under no obligation to enforce this state statute.  In other words, the decision to enter the Agreement required county policymakers to make a conscious choice from among the various alternatives, including the alternative not to enforce the statute at all.  As a result, the policy of enforcing Section 1224 is one "for which the [County] is actually responsible" in accord with the principles of *Monell* liability.  *Pembaur*, 475 U.S. at 479; *see also Harris*, 489 U.S. at 390; *Vives*, 524 F.3d at 353; *Spell*, 824 F.2d at 1386.

The County's policy, however, differs from the Commonwealth's policy; although the two overlap, they are not coextensive.  The Commonwealth is responsible for applying the entire Code to all outdoor advertising.  The County, by contrast, has decided to enforce only Section 1224, to enforce it only on certain roads and certain days of the week, and to fine only egregious violators.  J.A. 498–499.  The County's policy does not incorporate other provisions of Virginia's sign regulations but is limited to signs within the limits of highways.  Perhaps for that reason, the County's policy does not incorporate Section 1204,

22

which excepts certain categories of outdoor advertising from particular provisions of Virginia's sign regulations "if securely attached to real property or advertising structures." Va. Code Ann. § 33.2-1204; *see*, *e.g.*, *id.* § 33.2-1204(1) (exempting advertisements "securely attached to a place of business or residence"), (2) (exempting signs "on any farm"), (14) (exempting signs "upon property warning the public against hunting, fishing, or trespassing thereon"). Neither Section 1225 nor the Agreement mention Section 1204, and although the DCC Policy explicitly lists exceptions to enforcement, it does not include the exceptions in Section 1204 or otherwise purport to apply that statute.

BTA's complaint does not allege any other source of County policy regarding the enforcement of Section 1224 or any custom outside the written policy. But BTA contends that the County's policy must implicitly incorporate Section 1204's exceptions in order to comply with state law. The County persuasively explains how its enforcement policy accords with the broader scheme of Virginia sign regulation. But more fundamentally, our question is not whether the County is complying with state law but whether the policy it voluntarily adopted and follows—whether in step with other state regulations or not—caused the alleged infringement of BTA's constitutional rights. The County did not adopt the exceptions in the pre-amendment version of Section 1204 into its policy, therefore the County cannot be liable for harms allegedly caused by those exceptions.

The target of BTA's First Amendment claim is Virginia's sign regulations. Although the County can be liable for enforcing a state regulation it has voluntarily adopted as its own, it cannot be held liable for state statutes it has not consciously adopted into its own policy. Because BTA has not alleged a link between the County's policy of enforcing

23

Section 1224 and its alleged injury, BTA's Section 1983 action against the County for violation of its First Amendment rights fails.

C.

Separate from its challenge to the constitutionality of the Virginia statutes, BTA also alleges that the County selectively enforced its policy against BTA in violation of the Equal Protection Clause of the Fourteenth Amendment. To state a claim, BTA must plead facts that, accepted as true, would allow the court to draw the reasonable inference that "the government's enforcement process 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Cent. Radio Co. v. City of Norfolk*, 811 F.3d 625, 634–635 (4th Cir. 2016) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). Discriminatory purpose implies more than "awareness of consequences"; rather, a plaintiff must show that the decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of' . . . its adverse effects upon an identifiable group." *Wayte*, 470 U.S. at 610 (internal quotation marks omitted); *cf. Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam) (affirming viability of class-of-one equal protection claim). Our precedent has recognized several factors as probative of discriminatory intent, including:

> (1) evidence of a "consistent pattern" of actions by the decisionmaking body disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account any history of discrimination by the decisionmaking body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decisionmakers on the record or in minutes of their meetings.

24

*Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 819 (4th Cir. 1995); *see also Cent. Radio*, 811 F.3d at 635.

We agree with the district court that BTA failed to plead sufficient facts showing that the County was motivated by a discriminatory intent. The facts alleged in BTA's complaint primarily concern discriminatory effect. But a disparate impact standing alone does not demonstrate discriminatory intent, *see Sylvia Dev. Corp.*, 48 F.3d at 823, and a few instances of disparate impact in enforcement do not amount to a consistent pattern. BTA does not allege any significant deviation from normal procedures or indicting statements by decisionmakers. BTA's allegations that citizen complaints spurred the Commissioner's enforcement against it and that a Board member called a BTA officer to demand compliance with the law before the County began issuing penalties do not tend to show that the County intentionally, much less "irrationally or arbitrarily," treated BTA differently from similarly situated parties. *Tri Cnty. Paving, Inc. v. Ashe County*, 281 F.3d 430, 440 (4th Cir. 2002). The same goes for the allegation that County training materials included photographs of BTA's signs as examples of Section 1224 violations. We agree with the district court that these allegations are, at best, consistent with a discriminatory scheme but ultimately fall short of nudging BTA's selective enforcement claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Bruce & Tanya*, 355 F. Supp. 3d at 415.

V.

Lastly, we consider the County's cross-appeal of the denial of its request for attorney's fees and costs under 42 U.S.C. § 1988.

25

Section 1988 gives courts discretion to award attorney's fees and costs to a "prevailing party" in various kinds of civil rights cases, including suits brought under Section 1983. 42 U.S.C. § 1988(b). A court may award attorney's fees to a prevailing defendant but only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). A district court's determination in this regard is entitled to "great deference." *EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 517 (4th Cir. 2012).

As an initial matter, we reject the County's assertion that the district court erroneously required it to show that BTA's claims were "tantamount to bad faith." County Opening & Response Br. at 24. The district court quoted and applied the correct standard, and its citation to a Sixth Circuit decision does not indicate otherwise when considered in context. *See Bruce & Tanya & Assocs. v. Bd. of Supervisors of Fairfax Cnty.*, No. 1:17-cv-1155 (LMB/TCB), 2019 WL 7900792, at *3 (E.D. Va. Jan. 17, 2019) (quoting "frivolous, unreasonable, or without foundation" standard from *Fox v. Vice*); *see also Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (acknowledging that "[a] prevailing defendant should only recover upon a finding by the district court that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith" (internal quotation marks omitted)).

The district court ruled that BTA's selective enforcement claim did not warrant fee shifting because it "was not so groundless as to constitute an abuse of the judicial process." *Bruce & Tanya*, 2019 WL 7900792, at *3 (internal quotation marks omitted). The court

26

noted that it denied the County's first motion to dismiss the selective enforcement claim and that the state court's rejection of a similar claim did not prove that it was frivolous. We discern no abuse of discretion in this ruling. On appeal the County asserts that its success on BTA's other claims against it also justified a fee award, but that contention does not strengthen its argument. BTA's First Amendment claim against the County, although not successful, was not frivolous, unreasonable, or without foundation. The district court did not abuse its discretion in denying the County's fee request.

*　*　*

BTA has failed to establish that enforcement of Virginia's signage regulations caused it harm of a constitutional dimension. Though it prevailed below, the County has not established that the claims BTA raised were frivolous. We therefore affirm both the district court's judgment dismissing BTA's claims and its judgment denying the County's request for attorney's fees.

*AFFIRMED*